Paul F. LISCHIO et al.

v.

ZONING BOARD OF REVIEW OF the TOWN OF NORTH KINGSTOWN et al.

No. 2001–505–M.P.

Supreme Court of Rhode Island.

March 21, 2003.

James M. Sloan, III, Providence, James Moretti, Cranston, for Plaintiff.

A. Lauriston Parks, Jamestown, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, J., and SHEA, J. (ret.).

## OPINION

GOLDBERG, Justice.

The petitioners, Paul F. Lischio and Marguerite Lischio (Lischios or petitioners) seek review by writ of certiorari of a Superior Court judgment that affirmed in part and reversed in part the decision of the respondent, the Zoning Board of Review of the Town of North Kingstown (zoning board or respondents), which denied dimensional and use variance relief for two parcels of land owned by petitioners and located in North Kingstown. The petitioners challenge that portion of the decision of the hearing justice that affirmed the zoning board's denial of their request for a dimensional variance on one of the lots.

We grant the petition and quash the judgment. We hold that the zoning board failed to set forth any findings of fact or its reasons pursuant to G.L.1956 § 45–24–41(d)(2) for denying the dimensional variance. We are further satisfied that petitioners demonstrated by substantial evidence that the hardship they would suffer by a denial of the requested relief amounted to a deprivation of all beneficial use of the property; a showing far in excess of the burden necessary for a dimensional variance. Moreover, we are of the opinion that the Superior Court misapplied the requirements of § 45–24–41(d)(2) as it relates to dimensional variances by inappro-

priately resting its decision on the use of the parcel rather than the relief requested. Therefore, we grant the petition for certiorari, quash the judgment of the Superior Court and remand this case to the Superior Court with instructions to grant the petitioner's request for a dimensional variance.

## Facts and Travel

The petitioners own contiguous lots in the Town of North Kingstown (town). The lots are identified as assessor's plat 102, lot No. 129 and assessor's plat 101, lot No. 20. Lot No. 20 is landlocked and thus it has no frontage on any road. Lot No. 129 has frontage on Highbush Terrace, a road located within a residential neighborhood identified as Mountain Laurel Estates (MLE). Originally lot No. 20 consisted of more than forty-seven acres, but part of the lot was taken by eminent domain and serves as a portion of Route 4 in the Town of North Kingstown. After the subsequent Department of Environmental Management condemnation, petitioners were left with approximately sixteen acres of undeveloped land.

As noted, the state of Rhode Island in 1985 took by eminent domain a portion of petitioner's property. The land to the east of Route 4 became what is known as "Fiddlesticks," a golf-driving range. In addition, the Department of Environmental Management condemned a portion of the land situated to the west of Route 4 for a wetlands buffer, and the remaining sixteen

acres became known as lot No. 20. In 1988, the North Kingstown Planning Commission granted subdivision approval for a separate parcel of land, not owned by the Lischios, which was to become a residential subdivision known as MLE; this development was to the west of lot No. 20. Highbush Terrace, a street within MLE, extended almost to the boundary of lot No. 20. To the easterly end of Highbush Terrace was a small lot designated as lot No. 129. This lot contained an express developer's plat notation designating it "for roadway purposes only." The developer of MLE subsequently conveyed lot No. 129 to petitioners by warranty deed, recorded January 10, 1992. Although described on the MLE final plan map as a roadway, lot No. 129 is zoned village residential.

The North Kingstown comprehensive plan land use map, which the town adopted in 1992 and the state approved in 1995, designated the area containing lot Nos. 20 and 129 for low-density-residential development. Both lots are also located in the town's groundwater overlay district. Despite this designation, the zoning classification for lot No. 20 remained as general business.[1] To conform with the comprehensive plan, the town amended its zoning ordinance in 1998 and rezoned all the lots surrounding lot No. 20, located within the groundwater overlay district, as rural residential with a low density of one dwelling unit for each two-acre lot. According to respondent, the town did not rezone lot

---

1. On July 10, 2000, after petitioners filed their application for variances in this case, the Town of North Kingstown subsequently amended the zoning classification of lot No. 20 to rural residential, pursuant to a petition from the Mountain Laurel Estates Homeowners Association. The Lischios allege that the change was approved even though they objected to the procedure and to Mountain Laurel Estates Homeowners Association's lack of standing because of an allegedly for-

feited charter. The petitioners also allege that the town solicitor advised the town council that such action would not have any effect on the vested interest of petitioners in this case according to G.L.1956 § 45–24–44. The petitioners challenged the zoning change in Superior Court and the case is currently pending resolution and designated *Lischio v. Town of North Kingstown Town Council,* No. WC 00–372.

No. 20 because there was an "on-going dialogue" with petitioners on alternate development proposals. The town and petitioners apparently were unable to agree on various proposed residential and commercial development options for lot No. 20, including a motel, a permitted use that was suggested by petitioners. The record discloses that the zoning classification for lot No. 20 remained general business at this time.

After numerous development proposals were rejected or outright refused by the town,[2] the petitioners decided to develop lot No. 20 as a mini self-storage facility. In January 2000, petitioners filed an application for a dimensional variance from the frontage requirements of lot No. 20 [3] and a use variance for lot No. 129 to construct a road on this lot that would connect Highbush Terrace with the otherwise landlocked lot No. 20. The zoning board conducted hearings on the application for both variances on February 8 and February 29, 2000. On March 28, 2000, the zoning board denied petitioners' application for both the requested use variance for lot No. 129 and the dimensional variance for lot No. 20. On April 11, 2000, the zoning board issued a written decision implementing the denial of the application for both variances on the ground that petitioners failed to satisfy the criteria set forth in Section 21–14 of the Town of North Kingstown Zoning Ordinance entitled, "Additional procedures—Variances." [4] The zoning

2. The record discloses that the instant application was refused by the Director of Planning and Development for North Kingstown, necessitating an action for writ of mandamus in Superior Court; a less than hopeful prospect for a favorable result.

3. According to the zoning ordinance for the Town of North Kingstown Article IV, Table 2.B Business Districts, "Standard Dimensional Regulations for Business Districts," areas zoned as general business require a lot frontage of 200 feet. Lot No. 20 has only 51.23 feet of frontage on lot No. 129, the proposed road. Since it does not have the required 200 feet, dimensional relief was necessary.

4. Section 21–14(a)(1)–(4) and (b)(1)–(2) entitled "Additional procedures—Variances" of the Town of North Kingstown Zoning Ordinance contains language identical to G.L. 1956 § 45–24–41(c)(1)–(4) and (d)(1)–(2) upon which the Superior Court decision rested. (See Infra.)

 "**Section 21–14—Additional procedures—Variances.**

 (a) *Criteria for grant of variance.* In granting a variance, the zoning board of review shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant.
 (2) That said hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based;
 (4) That the relief to be granted is the least relief necessary.
 (b) *Evidence required for grant of a variance.* The zoning board of review shall, in addition to the above standards, require that evidence be entered into the record of the proceedings showing that:
 (1) In granting a use variance the subject land or structure cannot yield any beneficial use if it is required to conform to the land use provisions of the zoning ordinance. Nonconforming use of neighboring land or structures in the same district and permitted use of lands or structures in an adjacent district shall not be considered in granting a use variance; and
 (2) In granting a dimensional variance, that the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall

board found that, if approved, the dimensional variance would alter the character of the surrounding area by permitting an increase in dangerous traffic due to a mix of commercial and residential traffic; a confusing traffic situation because of the lack of directional signs; safety concerns for the hazardous materials that may be stored in the facility; and the diminution of property values. The board also found that granting the dimensional variance would impair the intent of the town's comprehensive plan because the area generally was designated for low-density-residential development and because of the express objective of Section D.1.2 of the North Kingstown Comprehensive Plan entitled "Land Use Vision, Goals and Objectives" that, *inter alia,* called for the protection of residential neighborhoods from incompatible nonresidential uses. For similar reasons, the zoning board denied petitioners' application for a use variance for lot No. 129.

The petitioners filed an appeal of the zoning board's decision in the Superior Court. Mountain Laurel Homeowners Association's motion to intervene in the appeal as a party defendant was granted. The trial justice reversed the zoning board's denial of the use variance for lot No. 129, but affirmed the decision denying the dimensional variance for lot No. 20. The trial justice concluded that lot No. 129 was intended to serve as a roadway as demonstrated by the plat notation that indicated it "be for roadway purposes only" and by the December 1998 North Kingstown Planning Commission hearing minutes in which the commission said that "Highbush Terrace has been extended to Mr. Lischio's property to provide access so that it would not become landlocked by the

> amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's

construction and land-taking of Route 4 * * *." In addition, the trial justice found that the roadway itself would not alter the character of the community and it would not impair the intent of the zoning ordinance or comprehensive plan. Neither party sought review in this Court of that portion of the Superior Court decision, and the variance granted for lot No. 129 is final.

With respect to the dimensional variance for lot No. 20, the trial justice focused on the use of the parcel—a mini self-storage facility—and explained that not all permitted uses of a parcel are compatible with the surrounding area. The trial justice noted that the criteria set forth in § 45-24-41(c) applied generally to variances, and was not limited to use variances. He held that the zoning board had before it substantial evidence and was thus entitled to find that a dimensional variance for a mini self-storage facility would alter the character of the community and contravene the intent of the comprehensive plan and/or the zoning ordinance. He specifically pointed to the introduction of commercial traffic as being incompatible with the area. The trial justice further found that the zoning board had record evidence that the intent of the comprehensive plan called for the area to be used for low-density-residential development. This Court issued its writ of certiorari on February 13, 2002.

### Analysis

Section 45-24-69 vests the Superior Court with jurisdiction to review a zoning board's grant of an application for a variance. Section 45-24-69(d) provides:

> property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief."

"The [Superior] [C]ourt shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision ·if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:

(1) In violation of constitutional, statutory, or ordinance provisions;

(2) In excess of the authority granted to the zoning board of review by statute or ordinance;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

 "This [C]ourt does not weigh the evidence; instead we review the record to determine whether substantial evidence existed to support the Superior Court justice's decision."[5] *OK Properties v. Zoning Board of Review of Warwick*, 601 A.2d 953, 955 (R.I.1992). "We do not reverse a Superior Court justice's decision unless it can be shown that the justice 'misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong.'" *von Bernuth v. Zoning Board of Review of New Shoreham*, 770 A.2d 396, 399–400 (R.I.2001) (quoting *OK Properties*, 601 A.2d at 955).

The petitioners allege that the decision of the trial justice was clearly erroneous and failed to recognize that the variance requested for lot No. 20 was for dimensional relief for road frontage in a general business district and was not related to the use of the parcel. They appear to contend that in the context of this case, the proposed use of the parcel and the analysis set forth in § 45–24–41(c) are not relevant considerations to their application for a dimensional variance. The petitioners assert that the evidence before the zoning board and the Superior Court was overwhelming and undisputed that lot No. 20 had *no* frontage or access to *any* public highway; consequently, a dimensional variance is necessary for *any* proposed use of the property and the denial of the requested relief creates an unnecessary hardship far in excess of the more than a mere inconvenience standard of proof.

The respondents essentially allege that there was substantial evidence to support the decision of the zoning board to deny the application in accordance with § 45–24–41(c). They contend that neither the zoning board nor the trial justice misapplied the law and that the evidence presented before the zoning board demonstrated that the proposed dimensional variance for lot No. 20 would alter the character of the surrounding area. In addition, respondents argue that the granting of the dimensional variance would contravene the town's comprehensive plan, in particular Section D1.2 entitled "Land Use Vision, Goals and Objectives" that protects residential neighborhoods from incompatible nonresidential uses. Again, respondent's argument relates to the use

---

**5.** "Substantial evidence * * * means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." *Caswell v. George Sherman Sand & Gravel Co.*, 424 A.2d 646, 647 (R.I.1981).

for lot No. 20, a self-storage facility and not the need for a dimensional variance.

Section 45–24–41(c) provides, in pertinent part:

"In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:

(1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area * * *;

(2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;

(3) *That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and*

(4) That the relief to be granted is the least relief necessary." (Emphasis added.)

Section 45–24–41(d) provides, in pertinent part:

"The zoning board of review shall, in addition to the above standards [set forth in subsection (c)], require that evidence is entered into the record of the proceedings showing that: * * * (2) in *granting a dimensional variance,* that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more

than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief." [6] (Emphasis added.)

We note that a recent amendment to § 45–24–41(d)(2) requires the applicant to demonstrate only "that the hardship [the applicant would suffer] if the dimensional variance is not granted amounts to more than a mere inconvenience." The new language in the 2002 amendment reinstates the judicially created *Viti* Doctrine, *Viti v. Zoning Board of Review of Providence,* 92 R.I. 59, 64–65, 166 A.2d 211, 213 (1960), which held that for an applicant to obtain a dimensional variance (also known as a deviation), the landowner needed to show only an adverse impact that amounted to more than a mere inconvenience. *See Sciacca v. Caruso,* 769 A.2d 578, 582 (R.I. 2001); *Gara Realty, Inc. v. Zoning Board of Review of South Kingstown,* 523 A.2d 855, 858 (R.I.1987); *DeStefano v. Zoning Board of Review of Warwick,* 122 R.I. 241, 246, 405 A.2d 1167, 1170 (1979). During the *Viti* era, landowners who wanted to establish a right to dimensional relief were not required to demonstrate a loss of all beneficial use of the parcel in the absence of a deviation nor was the zoning board required to find that the dimensional relief served the public's welfare or convenience. *Viti,* 92 R.I. at 64–65, 166 A.2d at 213. The *Viti* Doctrine was superseded by the 1991 amendment (P.L.1991, ch. 307, § 1) to chapter 24 of title 45, *see von Bernuth,* 770

---

**6.** A dimensional variance is defined in § 45–24–31(61)(ii) as:

"Permission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that

there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations."

A.2d at 400, but recently has been given new life by the General Assembly.

The statute in place at the time this application was decided § 45–24–41(d)(2), declared that "more than a mere inconvenience means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." *See Sciacca*, 769 A.2d at 582n.6 (holding that under the definition of "more than a mere inconvenience" under the 1991 amendment (P.L.1991, ch. 307, § 1) to § 45–24–41(d)(2), dimensional relief is more difficult to obtain than it was under *Viti*). We recognize that the revised language in the 2002 amendment lessens the burden of proof necessary to obtain dimensional relief and an applicant need show only that the effect of denying dimensional relief amounts to more than a mere inconvenience. *See* § 45–24–42(d)(2), as amended by P.L.2002, ch. 218, § 1; *Gara Realty*, 523 A.2d at 858. Although the statute in effect at the time an appeal is decided is the controlling law, *O'Reilly v. Town of Glocester*, 621 A.2d 697, 704–05 (R.I.1993), we conclude that a variance for lot No. 20 not only satisfies the more relaxed *Viti* standard for a dimensional variance, but that the Lischios also satisfied the more stringent test set forth in the statute as originally written.

■ It is important to note the distinction set forth in § 45–24–41 between the evidentiary showing necessary for a use variance and the lesser threshold for a dimensional variance: § 45–24–41(d)(1) applies to a use variance and requires a showing of a loss of all beneficial use and § 45–24–41(d)(2) applies to a dimensional variance and requires a showing of hardship amounting to more than a mere inconvenience. Further, while it is not apparent on the face of the text whether the provisions of § 45–24–41(c) apply to either use or dimensional variances or both, we

explained in *von Bernuth* that "[t]he requirements for obtaining a dimensional variance are listed in § 45–24–41(c) and (d)." *von Bernuth*, 770 A.2d at 400. We also stated in *Sciacca*, that "the plain language of § 45–24–41(c) [did] not differentiate between the type of variance sought by the applicant; rather, it applie[d] equally to requests for dimensional, as well as for use variances." *Sciacca*, 769 A.2d at 584. Accordingly, it is clear from our previous case law that in order for a request for a dimensional variance to be granted the applicant must satisfy the requirements for both § 45–24–41(c) and (d)(2).

### General Laws 1956 § 45–24–41(c)

In his decision, the trial justice indicated that the provisions of ·§ 45–24–41(c) applied to both use and dimensional variances and that pursuant to § 45–24–41(c)(3), the board is vested with "discretion * * * to determine on a case by case basis" whether the variance is proper "given the character of the surrounding area and the nature of the property * * *." Consequently, the trial justice held that the zoning board's decision did not constitute an abuse of discretion. However, although the trial justice was accurate in finding that § 45–24–41(c) applies to both use and dimensional variances, he incorrectly confined his analysis to the intended use of the parcel—a mini self-storage facility—and not the nature and extent of the dimensional relief sought. Further, neither the trial justice nor the zoning board addressed § 45–24–41(d)(2) and thus, they failed to determine whether "the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience" such that there is "no other reasonable alternative to enjoy a legally permitted beneficial use of [the] property." Both the trial justice and the zoning board

concluded that the denial was warranted because the use to which the dimensional variance hinged would · alter the general character of the surrounding area and would impair the intent and purpose of the comprehensive plan. We deem this to be error.

■ Although we previously have determined that the provisions of § 45–24–41(c)(3) are applicable and relevant for a dimensional variance when seeking dimensional relief for *lawfully permitted uses* the review should not focus on the use of the parcel because a legislative determination has been made previously that the use is appropriate and does not adversely affect the general character of the area. A permitted use, under § 45–24–31(52), is "[a] use by right which is specifically authorized in a particular zoning district." Thus, in this case, a mini self-storage facility is a permitted use because lot No. 20 is zoned general business; consequently, it will not adversely affect the character of the surrounding area.

■ Certainly, we can envision situations in which a request for a dimensional variance is such that the size, location or the type of relief sought will alter the general character of the surrounding area and/or the intent or purpose of the comprehensive plan or zoning ordinance. For example, § 45–24–41(c)(3) becomes determinative when a request for a height variance for a permitted use would result in a structure so massive or out of place as to alter the general character of the surrounding area. Another example would be a side-yard variance that would eliminate the front yard or sidewalk in a residential neighborhood, a result completely incompatible with the surrounding parcels. Furthermore, the 2002 amendment to § 45–24–41(d) (P.L.2002, ch. 218, § 1) provides that a dimensional variance is now available to an applicant in conjunction with a special-use permit application (formerly known as a special exception according to § 45–24–31(57)); in this circumstance the zoning board must decide whether granting the special-use permit conforms with the requirements of § 45–24–42 and further, whether a special-use permit coupled with dimensional relief adversely affects the surrounding area. *See* § 45–24–42(c), as amended by P.L.2002, ch. 218, § 1. But in this case, a mini self-storage facility is a permissible use; thus, the inquiry is confined to the extent and nature of the dimensional relief requested by the Lischios. A dimensional variance for road frontage for an otherwise land-locked lot is not of such size or degree that it would adversely impact the surrounding neighborhood or impair the intent of the zoning ordinance, it merely reduces the frontage necessary to obtain access to a public street. Accordingly, we are satisfied that the trial justice erred in his finding that the dimensional variance (and not the use of the parcel) would adversely affect the character of the surrounding area.

## General Laws 1956 § 45–24–41(d)

■ The language of § 45–24–41(d)(2) is clear: "in *granting a dimensional variance, * * * the hardship suffered by the* owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." (Emphasis added.) When seeking a dimensional variance, an applicant bears the burden of demonstrating to the satisfaction of the zoning board that there is evidentiary support for the proposition that there are no reasonable alternatives that allow the applicant to enjoy a legally permitted beneficial use of his or her property. *von*

*Bernuth*, 770 A.2d at 401. The petitioners, during the zoning board's hearings, provided substantial evidence to show that the hardship they would suffer by the denial of the dimensional variance amounted to more than a mere inconvenience. Indeed, the petitioners, through their expert witnesses, conclusively demonstrated that without dimensional relief they had no other reasonable alternatives to enjoy any legally permitted beneficial use of their property.[7] The expert testimony presented by petitioners established that lot No. 20 could not be used for any purpose without getting access to lot No. 129 for road purposes and that without a dimensional variance petitioners had no other feasible alternative for lot No. 20. One expert witness said:

> "when you look at the requested dimensional relief that [was] being sought, the test being if it [was] denied that there would be a hardship suffered by the applicant amounting to more than a mere inconvenience; I think [this] is more than a mere inconvenience. It is the ultimate inconvenience. You may have no use of the land."

This testimony was basically uncontroverted, and abundantly established that without the granting of the dimensional variance petitioners would have no other reasonable alternative to make *any* beneficial use of lot No. 20 consistent with its location in a general business zone.

The record before us establishes that a dimensional variance is necessary for any use allowed in a general business zone. Because the frontage for lot No. 20 is only 51.23 feet with access through lot No. 129, the proposed road, a dimensional variance was necessary for petitioners to develop lot No. 20 for any permitted use. According to North Kingstown's zoning ordinance, all general business district uses require a lot frontage of 200 feet.[8] As it stands, the only dimensional regulation that lot No. 20 ever could meet is the frontage requirement of forty feet for neighborhood business districts; but lot No. 20 is not zoned for a neighborhood business. Even according to the dimensional requirements for residential districts, a development that apparently respondents prefer, lot No. 20 could never meet the lot frontage requirements for low-density residential one-family dwellings because the frontage requirement is 250 feet. Nor could lot No. 20 satisfy any of the lot frontage requirements for any residential district without a dimensional variance.[9] The petitioners would require a dimensional variance for *any* proposed project in a general business zone and for *any* project in a low-density residential or rural residential zone. We reiterate that the *use* of lot No. 20 is a separate issue from the necessity for dimensional relief. Therefore, we are satisfied that in the context of this case, the denial of petitioners' dimensional variance application far

7. Of special concern to us is the fact that petitioners over a period of approximately three years approached the North Kingstown Planning Commission with various proposals to develop lot No. 20, all of which were viewed negatively, and were forced to seek a writ of mandamus directing the town to accept the instant petition. (*See* note 1 *ante*).

8. Article IV "Dimensional Regulations," table 2.B entitled "Standard Dimensional Regulations for Business Districts."

9. The lot frontage requirements for one-family dwellings for very low-density rural (VLDR) districts is 300 feet, for Rural residential (RR) districts it is 200 feet, for Pojac Point (PP) districts it is 200 feet, for Neighborhood residential (NR) districts it is 180 feet, and for Village residential (VR) districts it is 140 feet. For two-family dwellings the lot frontage requirement is 165 feet, but this type of structure could be built only in a village residential district.

exceeded the more than a mere inconvenience standard of proof because without dimensional relief petitioners would be left with no other reasonable alternative to enjoy *any* legally permitted beneficial use of their property. *See* § 45–24–41(d)(2).

The respondents proposed two alternate uses. During the zoning board's hearings one alternative offered by respondent was through a witness who testified that "a reasonable alternative [was] available * * * and that [was] for low density residential use." Secondly, a member of the zoning board at the meeting on March 28, 2000, during which the board voted to deny the application, suggested that a better use would be two-acre home sites. Yet neither of these options was plausible given that petitioners could not comply with the 250 foot frontage requirements for a low-density residential use. The options recommended to the zoning board as reflected in the record are incapable of being implemented absent the identical relief sought herein. Nor can we countenance a development scheme in which the town can withhold its approval of a dimensional variance until it receives a proposal for a use the town prefers. We conclude that the zoning board and the trial justice failed to recognize that petitioners would never be able to satisfy any dimensional requirement for a legally-permitted use regardless of whether it was classified as general business, low-density residential, or rural residential. Thus, we are satisfied that without the benefit of a dimensional variance petitioners are denied all beneficial use of their property, resulting in a regulatory taking.

### Conclusion

For the reasons stated, the petition for certiorari is granted, the judgment of the Superior Court is quashed, and the record certified to this Court is remanded to the Superior Court with directions to issue the dimensional variance of lot No. 20.

Justice FLANDERS did not participate.