DECISION
Before this Court is an appeal from the City of Newport Zoning Board of Review ("Board"). Appellant Gilbert Kahn ("Kahn" or "Appellant") seeks reversal of the Zoning Board's Decision granting Appellee N.I., Limited's ("N.I." or "Appellee") application for a dimensional variance. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
N.I. owns "Anglesea," a Newport Mansion, known as Tax Assessor's Plat 36, Lot 50, located at 245 Ruggles Avenue, in Newport, Rhode Island. (Zoning Board Decision at 1.) Kahn owns the property immediately to the west, 247 Ruggles Avenue ("Kahn's Property"). Id. Anglesea is located in an R-60 zoning district. Id.; see Newport Zoning Ordinance § 17.40.010. With respect to R-60 zones, Section 17.100.080 (B), "Accessory Uses," of the Newport Zoning Ordinance requires that accessory uses be set back at least twenty feet from the side and rear property lines.
Anglesea consists of approximately three and one-half acres with a 6400 square foot home and a detached garage. (Zoning Variance Application.) It is situated on the Newport Cliff Walk and is next door to "The Breakers," a famous Newport Mansion. N.I. sought a variance to construct a 550 square foot pool house twelve and one-half feet from the west property line *Page 2 
which abuts Kahn's Property. A pool house is an acceptable accessory structure and is a permitted use in an R-60 zoning district. (Zoning Board Decision at 1.)
The Board held a properly advertised hearing on November 22, 2004 (the "hearing"), at which N.I.'s attorney called three witnesses to testify: Kelly Coates, a representative of owner ("Coates"); Friedrich St. Florian ("St. Florian"), the architect of the proposal; and Thomas Sweeney, a real estate and appraisal expert. (See Hr'g Tr.) Jeremiah C. Lynch III, Esquire, represented Kahn and participated at the hearing, but offered no testimony or exhibits for consideration by the Board.
The Board granted the dimensional variance, finding that the N.I.'s application met the requirements of § 17.108.010 of the Newport Zoning Ordinance. (Zoning Board Decision at 3.) In making these findings, the Board found that the proposed pool house "maintain[ed] the estate character of the Property" and that the design was "appropriate considering the regulatory requirements of the Coastal Resource Management Council and the stately main structure on the Property."Id. at 2.
According to the transcript of the hearing, while there was ample space to construct the pool house that would not require a dimensional variance, the owners of Anglesea decided to construct it at a location that did not comply with the setback requirements for several reasons. (Tr. at 40-41.) Coates testified that the pool house plans were met with approval by the Newport Historic District Commission ("NHDC") and the Coastal Resource Management Council ("CRMC"), which required that it be at least 200 feet from the coast. (Tr. at 6.) St. Florian decided that the planned location was the least visible "from all points of view, including [those of] the neighbors." (Tr. at 41.) Furthermore, he followed the neighborhood tradition of "having auxiliary structures very close to the [property] boundaries." Id. at 46. Finally, the location of *Page 3 
an exterior staircase adjacent to the location of the proposed pool house, descending from the terrace (the "staircase"), influenced the proposed location of the pool house. (Tr. at 40.) N.I. designed the pool house after the staircase was designed, but before it was constructed.Id. The staircase was then built in 2001, with the current positioning of the proposed pool in mind. Id.
St. Florian testified that moving the staircase, allowing for the pool house to be built lawfully, would be difficult because the staircase is "very, very permanent," id. at 53, and would be "hurtful" to the design of the house. Id. at 49. St. Florian also testified that early in the overall construction phase he was "very confident that [they] could go before [the Board] with [their] design and plead for an exception from the zoning [for the pool house]." (Tr. at 45.)
Kahn seeks reversal of the Board's Decision. Notice was properly provided pursuant to G.L. 1956 § 45-25-69.1. Essentially, Kahn argues that the hardship from which N.I. seeks relief was self-imposed because of the placement of the staircase and that N.I. failed to demonstrate that it would suffer more than a mere inconvenience if the dimensional variance was not granted.
 Standard of Review
The Superior Court's review of a zoning board decision is governed by G.L. 1956 § 45-24-69(d), which provides:
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law; *Page 4 
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
"The Superior Court reviews the decisions of a plan commission or board of review under the `traditional judicial review' standard applicable to administrative agency actions." Restivo v. Lynch, 707 A.2d 663, 665
(R.I. 1998). When reviewing a zoning board decision, the Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute his or her findings of fact for those made at the administrative level." Lett v. Caromile,510 A.2d 958, 960 (R.I. 1986). The Court must examine the entire record to determine whether substantial evidence exists to support the Board's decision. Salve Regina College v. Zoning Bd. of Review, 594 A.2d 878,880 (R.I. 1991). Substantial evidence has been defined as "more than a scintilla but less than a preponderance." Mill Realty Assocs. v.Crowe, 841 A.2d 668, 672 (R.I. 2004).
 Analysis
Section 17.108.010 of the Newport Zoning Ordinance, which mirrors G.L. 1956 § 45-24-41, provides the criteria for a variance. Section 17.108.010(5) states:
 In granting a variance, the zoning board of review shall require that evidence of the following standards shall be entered into the record of the proceedings:
 (a) That the reasons set forth in the application justify the granting of the variance and that the variance, if granted, is the minimum variance that will make possible the reasonable use of the land, building or structure;
 (b) That the variance will not be injurious to the neighborhood or otherwise detrimental to the public welfare, and will not impair the intent or purpose of the zoning code or the comprehensive plan upon which this zoning code is based;
 (c) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant; and *Page 5 
 (d) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain.
In addition to the four statutory requirements, the applicant must show that its hardship suffered "if the dimensional variance is not granted amounts to more than a mere inconvenience." G.L. 1956 § 45-24-41(d)(2); Ordinance § 17.108.010(B)(6)(b); Viti v. Zoning Bd. of Review ofProvidence, 92 R.I. 59, 64-65, 166 A.2d 211, 213 (1960).
 Self-Imposed Hardship
Appellant contends that the Board's Decision granting Appellee a dimensional variance should be reversed because Appellee created its own hardship by building the staircase and because Appellee has not demonstrated that it would suffer more than a mere inconvenience if the variance were denied. (Appellant's Br. at 5.) Essentially, Kahn argues, "if [N.I.] had not built the terrace and the stairs to their existing dimensions, the pool house could have been constructed outside of the setback with[out] the necessity of a variance," and, therefore, N.I. created its own hardship and the variance should be denied.Id.
In order for the Court to affirm the Board's granting of a variance, the hardship from which the applicant seeks relief must not be the result "of any prior action of the applicant." Section 17.108.010(5)(d). The instant petition involves a multistage, construction project at a Newport mansion in an historic district. Similar, large scale building endeavors have encountered like issues. With respect to dimensional relief in a multistage construction project, trustees for the Republican National Committee acquired a series of variances for stages of construction of a property they were developing in proximity to the United State Capitol Building. Monaco v. District of Columbia Bd. ofZoning Adjustment, 407 A.2d 1091, 1095-96 (D.C. 1979). When the final variance approval expired before its corresponding stage of the *Page 6 
project was started, the trustees reapplied for a variance with modifications as a result of the purchase of an adjoining lot.Id. at 1096. Finding that the trustees did not create their own hardship, the Court upheld the granting of the variance because the hardship resulted in part from the "influence and proximity of the [U.S.] Capitol [Building] affecting the neighborhood." Id.
Similarly, Anglesea is a Newport Mansion, located on the coast in an Historic District which overlooks the Newport Cliff Walk. (Appellee's Ex. 1.) Because of CRMC regulations and the earlier-constructed staircase, which agrees with the "sweeping curves of the stone walls that [the house has]," the pool house could not be placed within 200 feet of the shoreline, precluding N.I. from constructing it on much of the rest of the property. (Tr. at 11 and 50.) Furthermore, the NHDC needed to approve the structure and its location, which it did, finding that the pool house was "appropriate in scale and massing and [is] compatible in detail and material to what `Anglesea' has become." (Appellee's Ex. 1, Section 2.) Moving the staircase and locating the pool house at a different place would require the plan to be resubmitted for approval by the CRMC and NHDC. However, approval was granted for the construction at the present location.
In determining whether a variance should be granted, courts consider applicants' alternatives. See von Bernuth v. Zoning Bd. of Review,770 A.2d 396, 401 (R.I. 2001). However, it is well-settled that CRMC regulations must be harmonized with zoning regulations. Specifically, § 17.04.020(M) provides that Newport's zoning ordinances "further the purpose" of "[p]roviding for coordination of land uses with contiguous municipalities, other municipalities, the state, and other agencies, as appropriate, especially with regard to resources and facilities that extend beyond municipal boundaries or have a direct impact on that municipality." See also G.L. 1956 § 45-24-30(13). Accordingly, the Board's finding — that the pool house's location *Page 7 
was "appropriate considering the regulatory requirements of [the CRMC] and the location of the stately main structure on the Property," and "not the result of any prior action of the applicant" — is not clearly erroneous. (Zoning Board Decision at 2.) The record reflects the inconvenience is related to the unique characteristics of the structure and the land.
 More than a Mere Inconvenience
Kahn further contends that N.I. failed to demonstrate that if the variance were denied, it would suffer more than a mere inconvenience, other than the renovation costs of moving the staircase. (Appellant's Br. at 6.) Appellee contends that the "solid and very, very permanent" staircase was located in its current position to conform to the "sweeping lines" of the home. (Tr. at 50 and 53.)
It is well-settled that "landowners who want to establish a right to dimensional relief [are] not required to demonstrate a loss of all beneficial use of the parcel in the absence of a deviation nor [is] the zoning board required to find that the dimensional relief served the public's welfare or convenience[.]" Lischio v. Zoning Bd. of Review ofthe Town of N. Kingston, 818 A.2d 685, 691 (R.I. 2003) (quotingViti, 92 R.I. at 64-65, 166 A.2d at 213). Rather, they only need to show that their adverse impact rises to the level of mere inconvenience.Lischio, 818 A.2d at 691; see also Travers v. Zoning Bd. of Review ofBristol, 101 R.I. 510, 515, 225 A.2d 222, 224 (1967) (holding that the Viti standard was satisfied when applicant wanted to build a non-conforming garage in order to "`give [his] tenants a little yard'");Monaco, 407 A.2d at 1095 (holding that Appellees "will suffer `undue hardship' if not allowed to expand according to plans of 20 years' duration formed with the ostensible consent of the zoning authorities").
Here, the record reflects that N.I. will suffer more than a mere inconvenience if the granting of the area variance is not affirmed. N.I. embarked on a several-stage renovation plan, *Page 8 
designed by a well-known architect, that was approved by the NHDC in 1999. See Appellee's Ex. 1, Section 2. Moreover, the record reflects that the lack of approval from the CRMC and NHDC for another location, other than the one already approved, and the hardship of moving the staircase, which was important to the historical and architectural features of the house, would create more than a mere inconvenience.Viti, 92 R.I. at 64-65, 166 A.2d at 213. Accordingly, the Zoning Board's Decision, finding that N.I. suffered more than a mere inconvenience, is not clearly erroneous.
 Conclusion
The Court finds that the Zoning Board's Decision to grant the dimensional variance is supported by competent evidence. The Zoning Board's Decision that Appellee did not create its own hardship — rather, that the hardship was created by a number of factors unique to Anglesea — is not clearly erroneous. Furthermore, the Zoning Board's Decision that Appellee would suffer more than a mere inconvenience if the dimensional variance were denied is not clearly erroneous. Substantial rights of the Appellant have not been prejudiced. Accordingly, the Board's Decision is affirmed.
Counsel shall submit the appropriate judgment for entry.