DECISION
Before the Court is an appeal from a decision ("Decision") of the Zoning Board of Review of the Town of Tiverton ("Board"), which denied Larry B. Nogueira's ("Nogueira") application for a dimensional variance. The Appellant, Nogueira, seeks reversal of the Board's Decision. Jurisdiction of the Appellant's timely appeal is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
Nogueira is the owner of real property located on Three Rod Way in Tiverton, legally described as Assessor's Map 1-3, Block 185, Card/Lot 20 (the Property). (Tr. 11/05/09 at 3.) The Property, which contains approximately 1.5 acres of land area, is located in an R-80 Residential Zoning District. See id. Nogueira's Property is dimensionally nonconforming in two main respects. Although a minimum lot size area of 80,000 square feet is required for a single-family dwelling, the Property consists of only 54,593 square feet.See July 28, 2008 Petition for Variance at 4; Tiverton Zoning Ordinance Article V, Section 1. Additionally, *Page 2 
although Nogueira's proposed plans would result in a frontage of only 8.2 feet, 50 feet is required. (Tr. 11/05/08 at 9.)
In July 2008, Nogueira filed a petition for a dimensional variance in order to construct a three-bedroom single-family dwelling. (July 28, 2008 Petition for Variance.) With respect to the application, Nogueira alleged that the "proposed dwelling [would] satisfy all of the dimensional requirements of the Zoning Ordinance except for the front yard setback." Id. However, "out of an excess of caution," Nogueira requested a rear, side, and lot area variance. Id.
The Board held properly noticed public hearings regarding the variance petition on September 3, 2008 and November 5, 2008. At the Board's November 2008 hearing, it was noted that Nogueira previously had illegally, and without the required authority, altered and/or expanded a previously nonconforming use. Specifically, he had removed an existing mobile travel trailer and illegally replaced it with a modular-style mobile home, a deck, and utilities. The building inspector had ordered their removal, but at the time of the hearing, the deck still remained. (Tr. 11/05/08 at 11.)
Gareth Eames (Mr. Eames) was the first to testify on Nogueira's behalf. Mr. Eames, who served as the Tiverton Zoning Official, testified that pursuant to Article VII of the Tiverton Zoning Ordinance, a proportion reduction could be granted to the side and rear yard lines of a substandard lot.[1] In Mr. Eame's view, if the proportion reduction was granted, the only setback variance that would be required would be for the front lot line. (Tr. 11/05/08 at 6-7.) *Page 3 
Next, John Braga (Mr. Braga) testified on behalf of Nogueira. The Board recognized Mr. Braga as an expert in the fields of land surveying and engineering. Id. at 12-13. Mr. Braga stated that he designed the proposed plan for the three-bedroom single-family dwelling.Id. at 13. He further testified that the Rhode Island Department of Environmental Management ("DEM") approved the installation of a septic system that would be adequate for a house of the proposed size.Id.
In Mr. Braga's view, the proposed front yard set back of only 8.2 feet was necessary for several reasons. First, Mr. Braga believed that the septic system could only be built in one location so that it would have no impact on other private wells. Id. at 14. Secondly, Mr. Braga relied on the services of wetland consultant Chris Mason to conclude that approximately half of Nogueira's property was classified as a wetland area. Id. at 14-15. Consequently, Mr. Braga asserted that in designing the septic system and in situating the house, he had to be mindful of the restrictions set forth by the Rhode Island Coastal Resource Management Council ("CRMC") — the entity ultimately responsible for permitting construction in wetland areas. Id. at 15.
Mr. Braga further testified that for "new construction and for a lot this size and for type two waters, which this is, there is a coastal buffer requirement of 100 feet" and a construction setback of an additional 25 feet. Id. Given those restrictions, Mr. Braga believed that CRMC's mandate "would put the 100 foot buffer halfway out into Three Rod Way," suggesting it may be *Page 4 
impossible to build the dwelling even if the petition were granted.Id. Mr. Braga averred that in some cases, CRMC will permit "a fifty percent variance or reduction in the buffer." Id. Although he was not certain, he thought that they would be willing to give "a 50-foot buffer" from the coastal feature instead of the required one hundred feet. Lastly, Mr. Braga testified that the entire Property was "in flood hazard zone V17." Id. at 16. Mr. Braga asserted that the proposed location of the dwelling would enable the property to be built on "pretty much the highest level of the lot." Id.
When questioned by the Board, Mr. Braga admitted that he was not certain that the septic system could survive occasional flooding.Id. at 27-28. However, he stated that DEM "regularly approves septic systems in flood hazard areas" and that construction of the proposed residence, in his view, "would meet all the requirements of flood hazard construction." Id. at 27.
A number of nearby property owners objected to Nogueira's proposed plans. See id. at 25-39. First, Paul Kolderie, who owned property at 33 Three Rod Way, testified that should the Board grant the variance, other "people will want houses [in the same area] too" which may not be "in the public interest." Id. at 26. Next, Steven Gomes, an abutting property owner, testified that he was concerned about anyone building on the "lower three lots," which included Nogueira's property. Id. at 29. Mr. Gomes provided the Board with photographs that depicted flooding on the Property. Id. at 30. Mr. Gomes admitted that one of the photographs was taken in 2006 by a third party, and he also failed to affirm that the photographs were a fair and accurate representation of what they purported to be; however, he stated that he personally had observed the Property being flooded up to the edge of Three Rod Way "a handful of times." Id. at 31, 33.
Next, Mr. Gomes's wife, Helen, testified that she was concerned about the adequacy of the potable drinking water supply. Id. at 34. According to her, the residents of Three Rod Way *Page 5 
currently have limited access to fresh water, which runs out in August.Id. Given that the Board had enabled other individuals to put "more residences out here," Ms. Gomes believed that the other new residents — and Mr. Nogueira's presence — would have an impact on "the whole island." Id.
Lastly, Tom Ramotowski (Mr. Ramotowski), Chairman of the Conservation Commission and the Fogland Beach Oversight Committee, testified that Property "is a barrier beach with an attached salt marsh."Id. at 36. Based on his conversations with the CRMC, Mr. Ramotowski learned that the Property is "one of the top five barrier beach complexes in the entire state." Id. Consequently, Mr. Ramotowski asserted that the Board had the "responsibility to be extra careful here to protect this area, to make sure that any kind of disturbance or building nearby is not going to negatively impact that very valuable resource." Id. He further testified that if the septic system failed or if the tide "runs over the [Property's] septic system and carries some things out," such pollution would adversely impact the people who shellfish, swim, kite sail, and wind surf in the area. Id. 36-37
In summarizing his client's request for a variance, counsel for Nogueira argued that despite allegations made concerning the possibility of septic tank waste pollution, the Department of Environmental Management had "approved the septic system that's proposed in this location." Id. at 41. Furthermore, he argued that the CRMC would have to "approve the proposed construction of the dwelling," which implied that Nogueira did not intend to run afoul of applicable laws and regulations. Id.
At the conclusion of the November 5, 2008 hearing, the Board voted 5-0 to deny Nogueira's petition. Id. at 48. The Board filed its written decision on November 17, 2008. On November 24, 2008, Nogueira timely filed his appeal to this Court for review. *Page 6 
 II Standard of Review
Rhode Island General Laws § 45-24-69(a) provides this Court with the specific authority to review decisions of town zoning boards. This Court's review is governed by § 45-24-69(d), which provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Judicial review of an administrative action is "essentially an appellate proceeding." Notre Dame Cemetery v. R.I. State LaborRelations Bd., 118 R.I. 336, 339, 373 A.2d 1194, 1196 (1977);see also Mauricio v. Zoning Bd. of Review of Pawtucket,590 A.2d 879, 880 (R.I. 1991). The deference given to a zoning decision is due, in part, to the fact "that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Cohen v.Duncan, 970 A.2d 550, 561 (R.I. 2009) (quoting Monforte v. ZoningBd. of Review of E. Providence,93 R.I. 447, 449, 176 A.2d 726, 728 (1962)). *Page 7 
Accordingly, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence.Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount, more than a scintilla but less than a preponderance." Caswell v.George Sherman Sand Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou,120 R.I. at 507, 388 A.2d 824-25).
Furthermore, the reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New England Naturist Ass'n, Inc. v. George,648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v.International Ass'n of Fire Fighters, AFL-CIO, Local 1589,119 R.I. 506, 380 A.2d 521 (1977)). Thus, this Court's review of a zoning board's factual findings is undertaken to ensure that a reasonable mind might accept them as adequate to support a conclusion.See Lischio v. Zoning Bd. of Review of N. Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003); Caswell, 424 A.2d at 647.
 III Analysis
On appeal, Nogueira argues that the Board's Decision was not based on the competent evidence in the record. Specifically, Nogueira contends that there was no evidence in the record to dispute that the proposed location of the dwelling was the only possible location. Furthermore, Nogueira claims that the Board's oral discussion of the merits of his petition did not deal with the legal requirements which pertain to a petition to grant a dimensional variance. Consequently, Nogueira urges this Court to find that the Board's Decision was clearly erroneous in view of the reliable, probative and substantial evidence contained in the entire record. *Page 8 
In response, the Board argues that Nogueira failed to present sufficient evidence to show that his petition complied with each of the standards set forth in Tiverton Zoning Code for the issuance of a dimensional variance. The Board also argues that its denial of the variance is supported by evidence in the record showing that Nogueira did not meet his burden of establishing the standards for granting a dimensional variance, and that the Board did not believe that the proposal was the only alternative to the development of the Property.
 A Sufficiency of the Evidence
Nogueira claims that the Board's Decision "is completely at variance with the oral discussion [to deny the variance] and cannot stand for that reason alone. . . ." (Pl.'s Mem. at 16.) The Board counters that the Decision reflected the Board's discussion concerning its position that Nogueira failed to satisfy the statutory requirements for relief.
Pursuant to § 45-24-61(a) of the General Laws, a zoning board must issue a written decision which affirms or denies a request for zoning relief. The Legislature has mandated that "[t]he zoning board of review shall include in its decision all findings of fact. . . ." Id. In addition, the Supreme Court has long held that "a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review." Bernuth v. Zoning Board of Review of NewShoreham, 770 A.2d 396 (R.I. 2001) (quoting Cranston Print WorksCo. v. City of Cranston, 684 A.2d 689, 691 (R.I. 1996)). Thus, the Court "must decide whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, and applied the proper legal principles." Bernuth, 770 A.2d at 401 (quotingIrish Partnership v. Rommel, 518 A.2d 356, 358 (R.I. 1986)). *Page 9 
The findings must be factual rather than conclusional, and the application of the legal principles must be something more than a recital of a litany. See Bernuth, 770 A.2d at 401. These are minimal requirements and, unless satisfied, judicial review of a zoning board decision is impossible. See id. In the event that "the board fails to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper [under] the circumstances." Id.
In Sciacca v. Caruso, 769 A.2d 578 (R.I. 2001), our Supreme Court cautioned zoning boards and their attorneys to ensure that zoning board decisions on variance applications address the evidence in the record and determine whether that evidence either meets or fails to satisfy each of the legal preconditions set forth in § 45-24-41 (c) and (d). See Sciacca, 769 A.2d at 585. The Court noted that such a specification of evidence in the decision would greatly aid the Superior Court in undertaking any requested review of zoning board decisions. See id.
In its Decision, the Board found the following:
 4. "That the Premises is substandard in area for the R80 district and that the proposed dwelling would be located closer to the front, rear and side yard than permitted in the R80 district.
 5. That the petitioner offered no evidence to show compliance with the standards for relief in the Zoning Ordinance for the sought after relief.
 6. A witness was presented by the petitioner who testified that the lot was constrained by several environmental features and was located in a V flood zone.
 . . .
 8. The Board did not find the factual statements and opinions of the petitioner accurate or credible. The Board did not find any evidence was offered by the petitioner to show compliance with the standards for relief contained in the Zoning Ordinance for the sought after relief." (Decision at 1).
Based on the review of the record, this Court is satisfied that competent evidence exists to support the Board's findings.See New England Naturist Ass'n, Inc.,648 A.2d at 371 (stating the reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings[]"). Accordingly, this Court does not find that the "Decision is *Page 10 
completely at variance with the oral discussion." Additionally, the Court further finds that the Board's Decision complies with § 45-24-61(a) because it sets forth in sufficient detail the findings of fact that the Board relied upon in denying Nogueira's request for a dimensional variance. Thus, the Court possesses the necessary information to reasonably evaluate the Board's Decision and to reach the substantive merits of the instant appeal. SeeBernuth, 770 A.2d at 401 (holding a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions so that such decisions may be susceptible of judicial review).
 B Standard for Granting a Dimensional Variance
Nogueira contends that the language of Section 2(b) of the Zoning Ordinance does not comply with § 45-24-41(d)(2). Specifically, he contends because the statute was amended in 2002 to apply a less stringent standard for proving demonstrable hardship than that of the ordinance, "it goes beyond the Town's authority to enact zoning regulations." (Pl. Mem. at 5.) The Court acknowledges that the Zoning Ordinance, in fact, reflects a harsher standard and thus will apply the statutory standard as articulated in Lischio, 818 A.2d at 692 (requiring an applicant to show "that the effect of denying relief amounts to more than a mere inconvenience").
It is axiomatic that "[a] dimensional or area variance — also known as a `deviation' — provides relief from one or more of the dimensional restrictions that govern a permitted use of a lot of land, such as area, height, or setback restrictions." Sciacca v. Caruso,769 A.2d 578, 582 n. 5 (R.I. 2001). Section 45-24-31(61)(ii) defines a dimensional variance as
 "Permission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has *Page 11 
shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations. However, the fact that a use may be more profitable or that a structure may be more valuable after the relief is granted are not grounds for relief." Section 45-24-31(61)(ii).
Section 45-24-41 provides in pertinent part:
 "(c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary."
 (d) The zoning board of review shall, in addition to the above standards, require that evidence is entered into the record of the proceedings showing that: . . . (2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief. . . ." Section 45-24-41 (emphasis added).
This requisite degree of hardship in the granting of a dimensional variance has changed over time. From 1960 until 1991, there existed a judicially created doctrine, which established a scheme that an applicant for a dimensional variance only needed to demonstrate that the hardship *Page 12 
resulting from the denial of a request for dimensional relief should amount to more than a mere inconvenience. See Viti v. ZoningBoard of Review of Providence, 92 R.I. 59, 166 A.2d 211 (1960). In 1991, the General Assembly amended § 45-24-41(d)(2) to provide in pertinent part:
 "That the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." P.L. 1991 ch. 307, § 1.
In 2002, the General Assembly again amended § 45-24-41(d)(2) by removing the language added in 1991, thus reinstating the lesser standard employed by the Viti Doctrine; namely, "that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience." P.L. 2002, ch. 384, § 1. Our Supreme Court then clarified that "the revised language in the 2002 amendment lessens the burden of proof necessary to obtain dimensional relief and an applicant need show only that the effect of denying dimensional relief amounts to more than a mere inconvenience." Lischio, 818 A.2d at 692. This standard is to be used despite the statute's noting in the definitional section that for a dimensional variance, the applicant must show "that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property. . . ." Section 45-24-31(61)(ii).
The Town of Tiverton's Zoning Ordinance does not reflect the change to § 45-24-41(d)(2).[2] However, regardless of the language contained in the ordinance, the amended version *Page 13 
of § 45-24-41(d)(2) controls the standard of review because the Rhode Island Zoning Enabling Act controls and specifically delineates the jurisdiction of zoning boards. See Lincourt v. Zoning Board ofReview of Warwick,98 R.I. 305, 309, 201 A.2d 482, 485 (1964) (stating that the *Page 14 
authority of a zoning board is constrained by the terms of the zoning enabling act, and "the jurisdiction thereby conferred can neither be expanded nor diminished by the terms of an ordinance"). Despite any variance in the language of the ordinance and that of the statute, our Supreme Court has explained that "the statute in effect at the time an appeal is decided is the controlling law." Lischio, 818 A.2d 692 (citing O'Reilly v. Town of Glocester,621 A.2d 697, 704-05 (R.I. 1993)). Accordingly, because the instant matter arose after the 2002 amendment, regardless of the language of the ordinance, the Board was required to apply the less stringent standard codified in § 45-24-41(d)(2) as opposed to the outdated definition in ordinance.
A review of the Board's Decision reveals that the Board did not apply the more stringent pre-amendment standard. In fact, in its conclusions of law, the Board properly applied the statutory standard, stating "[t]hat the hardship that will be suffered by the petitioner of the subject property if the dimensional variance is not granted does not amount to more than a mere inconvenience." (Decision at 2). Consequently, the Board did not rely upon an erroneous standard.
 C The Board's Decision
Nogueira asserts that he demonstrated that the denial of the dimensional variance would cause him more than a mere inconvenience. He also maintains that he proved he satisfied the elements of G.L. 45-24-41(c)." Nogueira presented evidence with respect to each and every provision set forth in Article XVII of the Tiverton Zoning Ordinance. In particular, this Court notes on the Board's findings that Nogueira's relief would be "contrary to the public interest" and that the requested variance would "alter the general character of the surrounding area." At the November hearing, the Board made numerous findings of fact as to the variance requested. *Page 15 
Most notably, the Board did not believe that the relief was in the public interest. (Tr. 11/05/08 at 43, 47.) Specifically, one member noted Mr. Braga's candid admission that there "would be issues with the septic system if there was flooding on that property." Id. Given the Board's belief that the relief was not in the public interest, the general character of the area would be affected by granting the variance, and "for the adverse environmental impact that was testified to by Mr. Braga in event of flooding," the Board concluded that Nogueira failed to meet his burden to establish the standards for granting a dimensional variance. Id. at 47.
Mr. Braga, who was the only person qualified by the Board as an expert, testified that he believed the septic tank would be adequate because DEM approved its construction. (Tr. 11/05/08 at 13.) It is well settled that although "it is generally true that there is no talismanic significance to expert testimony [and it] may be accepted or rejected by the trier of fact, it is also true that, if expert testimony before a zoning board is competent, uncontradicted, and unimpeached, it would be an abuse of discretion for a zoning board to reject such testimony."Murphy v. Zoning Bd. of Review of the Town of S. Kingstown,959 A.2d 535, 542 (R.I. 2008) (internal citation and quotations omitted). However, it also is settled that expert testimony may be discredited in several ways, one of which is through a Board's questions. Id. at 542, n. 6 (stating "expert testimony can be discredited through examination of the expert by members of the zoning board"). Furthermore, "when there is persuasive lay testimony on the actual observed effects of prior residential construction[,] [such as prior flooding,] [t]he subject matter [is] not so arcane that inferences from factual lay testimony could not be drawn by members of the council based, in part, on their own expertise." Restivo v. Lynch,707 A.2d 663, 671 (R.I. 1998).
In the instant matter, although Mr. Braga was the only expert to testify, when he was questioned by the Board, he admitted that he was not certain that the Property's septic system *Page 16 
would be able to withstand occasional flooding. Id. at 27-28. The record reveals that the Property is located in a sensitive and protected wetland area. The record further reveals evidence of flooding that previously had occurred at the subject property. Given that Mr. Braga initially claimed that the septic system would be adequate, but later testified that it may not be adequate to withstand flooding in the area, one member of the Board stated:
 "Mr. Braga candidly admitted that there would be issues with the septic system if there were flooding on that property. I am concerned about the adverse impact to the neighbors and to the wetlands and to the environment. I'm really not comfortable with granting this relief." Id. at 43.
The Board specifically found in its Decision that it "did not find the factual statements and opinions of the petitioner accurate or credible." (Decision at 1.) Considering that the Board had very real concerns about flooding, coupled with the evidence of previous flooding and Mr. Braga's candid admission that flooding could result in overflow problems from the septic system, the Court does not find that the Board erroneously denied Nogueira's application for dimensional relief.[3]
 III Conclusion
After carefully reviewing the entire record, this Court is satisfied that the Board had competent evidence before it to deny Nogueira's request for a dimensional variance. Furthermore, the Decision was supported by the reliable, probative, substantial, and legally *Page 17 
competent evidence and was not in violation of the law. The Board's Decision also was not affected by error of law and was not characterized by an abuse of discretion. Nogueira's substantial rights have not been prejudiced. Accordingly, this Court affirms the Decision of the Zoning Board of Review of the Town of Tiverton.
Counsel for the prevailing party shall submit an appropriate judgment for entry.
[1] Section 4b of Article VII states in relevant part,
 "[w]here a substandard lot of record exists, the side yard and rear yard dimensional requirements for a residential structure may be reduced, and the maximum lot coverage for a residential structure may be increased, both in the proportion that the area of such substandard lot is less than the minimum area requirements of the district in which the lot is located. However, the resulting changes shall not create setbacks less than and lot coverage greater than the average setbacks and lot coverage, respectively, of adjacent properties within 200 feet; in no case shall the side yard be less than five feet nor the rear yard be less than ten feet, nor shall the maximum lot coverage exceed 25 percent."
[2] The Tiverton Zoning Ordinance Article XVII, Section 2 provides:
 "(a) The board may authorize, upon application in specific cases, a variance in the application of the terms of this ordinance, in accordance with the following provisions:
 (1) That special conditions and circumstances exist which are special or peculiar to the land or structure involved, and which are not applicable to other lands or structures in the same zoning district, and are not due to a physical or economic disability of the applicant.
 (2) That such relief will not be contrary to the public interest, and that, owing to special or peculiar site or structural conditions, literal enforcement of the provisions of this ordinance would result in an unnecessary hardship to the applicant.
 (3) That the unnecessary hardship which an applicant seeks to avoid shall not have been imposed by any prior action of the applicant. Purely monetary gain or loss shall not be considered to be an unnecessary hardship.
 (4) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based.
 (5) That in allowing relief from the provisions of this ordinance, the board shall grant the least variance from the provisions needed to remove the unnecessary hardship, and may impose any condition or safeguard as may be deemed in the public interest.
 (6) That no nonconforming use of neighboring lands, structures or buildings in the same district, and no permitted use of lands, structures or buildings in an adjacent district, shall be considered grounds for the issuance of a variance.
 (b) In addition to the above standards, the board shall require that evidence be entered into the record of the proceedings showing that:
 . . . .
 (2) In granting a dimensional variance, that the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." (Emphasis added).
[3] For purposes of discussion, this Court notes that Nogueira's actions in removing the legally non-conforming mobile trailer and illegally replacing it with a modular home and a deck may have contributed towards any hardship that he may suffer as a result of the Board's denial of his request. The reason for this is that a hardship may not be "the result of any prior action of the applicant." Sec. 45-24-41(c)(2). A self-created hardship label "seems to be most properly employed where one acts in violation of an ordinance and then applies for a variance to relieve the illegality." Id.
584 (quoting 7 Patrick J. Rohan, Zoning and Land UseControls § 43.02[6] at 43-66 (1998)). However, the Court need not review this issue as it was not raised by the parties. *Page 1