DECISION
Before this Court is an appeal from a decision of the Town of North Kingstown Zoning Board of Review (the "Board"), which denied the applicant, Ray Reedy, Inc. and Johnston Corporation ("Appellants") several dimensional variances from the Zoning Ordinance of the Town of North Kingstown (the "Ordinance") §§ 21-311(f)-(g), 21-186(d)(1) and Article IV Dimensional Regulations Table 2A. The Board also denied Appellants a special use permit pursuant to the Ordinance §§ 21-311(g)-(h). Appellants seek a reversal of the Board's decision. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
The property in dispute is located on Boyer Street, described as Lots 59 and 60 on Assessor's Plat 74 of the Town of North Kingstown, Rhode Island (the "Property"). The Property is comprised of two pre-existing legal non-conforming undersized lots pursuant to Ordinance § 21-311(e) and G.L. 1956 § 45-24-39, which have merged by operation of law. The Property consists of 4848 square feet of vacant land located in the Neighborhood Residential (NR/R-40) Zoning District, which generally requires 40,000 square feet of land for development of a single-family dwelling. (See Ordinance *Page 2 
Article IV — Dimensional Regulations, Table 2A.) The Property is also located in a Groundwater Overlay Zoning District, which requires that the average density of the lot does not exceed one dwelling unit per two acres.See section 21-186(d)(1).
The NR/R-40 Zoning District requires lots to have 90 feet of road frontage, to be 100 feet from front to rear and 80 feet wide, and to have side setbacks of 12 feet and a rear setback of 35 feet. Additionally, the Ordinance permits single-family dwellings on merged non-conforming lots comprising fewer than 10,000 square feet, provided that any interior side setback is 12 feet and that the rear setback meets the 35 foot requirement applicable to the NR/R-40 zone. (See Ordinance § 21-311(f).) Notwithstanding this provision, the Ordinance also provides that single-family dwellings are not allowed on merged lots within the NR/R-40 district that do not meet the required frontage and depth requirements, unless the frontage is 90 feet and the depth is 100 feet. (See Ordinance § 21-311(g).) The Property yields zero feet of frontage, a width of 50 feet, side setbacks of 11 and 9 feet, and rear setback of 30.5 feet.
In 2007, Appellants, who purchased the Property in 2002, requested dimensional variances for the following: (1) the lot size requirement pursuant to Ordinance § 21-311(f); (2) the depth requirement pursuant to § 21-311(g); (3) the frontage requirement pursuant to § 21-311(g); (4) the width requirement pursuant to Article IV — Dimensional Regulations, Table 2A; (5) the minimum density requirement pursuant to § 21-186(d)(1); (6) the rear setback requirement pursuant to Article IV — Dimensional Regulations, Table 2A; and (7) the side setback requirement pursuant to § 21-311(f). Appellants also requested special use permits for the following: (1) relief from the 90 foot frontage *Page 3 
requirement pursuant to §§ 21-311(g) and (h); and (2) relief from the 100 foot depth requirement pursuant to § 21-311(g).[1]
Public hearings on Appellants' application were held on June 12, 2007 and September 11, 2007. During the hearings, Appellants called three expert witnesses: Ed Pimental ("Pimental"), a land planning and zoning expert; Scott Morehead ("Morehead"), a professional engineer and land surveyor; and Robert Degregorio ("Degregorio"), a real estate expert. The experts were questioned by Appellants and the Board, and all three experts endorsed the proposed dwelling.
Pimental testified that the average footprint is 1700 square feet on a lot size of 14,000 square feet, which is approximately 12 percent lot coverage. (Tr. 6/12/07 at 7-8.) He testified that the proposal was designed to fit the character of the neighborhood [with 16 percent lot coverage] consisting of 780 square foot footprint on a 4848 square foot lot. Id. In support of the dimensional variances, Pimental testified that: there is no ability to acquire any additional land to bring it into compliance; the hardship is not the result of any prior action of the applicants; the granting of the requested variance would not alter the general character of the neighborhood; and the relief necessary would be the least relief necessary. (Tr. 6/12/07 at 10-11.) Pimental also testified that: the proposal would not alter the general character of the surrounding area nor pose a threat to the drinking water supply; the sewage and waste disposal system was approved; and the lot could meet parking requirements. (Tr. 6/12/07 at 12.) *Page 4 
As a professional engineer, Morehead testified that although the Property could not meet the requirement for two acres in the Groundwater Overlay District, the proposal does comply with the standards in applying denitrifying technology and set back from abutting wells. (Tr. 6/12/07 at 18.) He also testified that Appellants had already obtained a variance for the setback from the Property's own well, which was granted by Rhode Island Department of Environmental Management ("DEM") as part of the Individual Septic Disposal System ("ISDS") permit. Id. In response to the Board's question on traffic, Morehead responded that, "It's a short drive, long winding road coming from, in from, which is a dead end, minimal development. There is adequate access. This one additional house will certainly not cause congestion." (Tr. 6/12/07 at 19-20.) Morehead said the hardship from which the applicants seek relief is due to the unique characteristics of the land, the relief requested is the least relief necessary, and the hardship suffered if the relief is not granted would be more than a mere inconvenience. (Bd. Minutes 6/12/07 at 7.)
Degregorio testified — from a real estate point of view — that the value of the house would be worth approximately $229,000; and if Appellants were not able to build, then the land could not be used for anything. (Tr. 6/12/07 at 26.) The Board also questioned Richard Johnston, who identified himself before the Board as the applicant, but who appears to have actually been an agent of Appellant Johnston Corporation. The Board questioned Johnston as to whether he intended to live in the house, and he responded that he intended to sell it. (Tr. 6/12/07 at 23.)
Several neighbors also spoke on the record at the hearings including Christine Griffith, Shannon Griffith, and Ken Raposa. The neighbors described the road and *Page 5 
expressed their grave concern with regard to traffic and safety by referencing the unpaved and deteriorating nature of the road. (Tr. 6/12/07 at 27-45.) Ms. Griffith was concerned that her well would be closer to the applicants' septic system than it is to her own. (Bd. Minutes 6/12/07 at 8.) She said Boyer Street is a 20 foot wide dirt road for which there is no turnaround for emergency vehicles at the dead end.Id. Mr. Griffith was concerned about traffic on the one lane road with the amount of equipment needed for the construction. Id. Mr. Raposa voiced his concern that the construction equipment would damage the private dirt road. Id. Dale Grogan, a non-abutter resident of Shore Drive, testified that she was concerned with drainage and a lack of a proper water wetland crossing. (Bd. Minutes 6/12/07 at 9.) She said that during the winter months, access can be nonexistent causing the Boyer Street residents to park on Shore Drive. Id.
Thereafter, the June 12, 2007 hearing was continued to allow time for Town officials to look at Boyer Street. (Bd. Minutes 6/12/07 at 9.) During the second hearing, the Town's Principal Planner, John Hansen, testified that the Town's Fire Marshall reviewed the site and stated that the Fire Department is able to access the Property. (Bd. Minutes 9/11/07 at 2.) At that point, Mr. Griffith stated that the turn-out is inadequate for emergency vehicles and in a recent emergency, he was blocked in his driveway by vehicles. Id. However, Appellants' planning and zoning expert Pimental had previously testified that the turn-out is actually an easement.[2] (Tr. 9/11/07 at 6.)
Subsequently, the Board reviewed the application only as a special exception and use variance, and not also as dimensional variances applied for by Appellants. Id. at 27. *Page 6 
The Board applied the "no other beneficial use" standard appropriate for use variances rather than the less stringent "mere inconvenience" standard applicable to dimensional variances.[3] Id. at 25. Pursuant to the Ordinance, the Board must have four board members in favor of an application for a variance to be granted. (Ordinance § 21-11(c)(3).[4]) Three members voted to approve the application while two members denied it. (Tr. 9/11/07 at 27-30.) The opposing members stated:
 I have to agree with the folks, with the folks that spoke. Everything about it, the lot is substandard. I think in this case it was purchased with the understanding it was substandard. There is a financial gain that would be involved. It does seem to, it does seem to be in disagreement with section 906.3 [sic].[5] It's on the ground overlay. Whatever happened eight years ago is not today. I think as of the regulations today, we should be following the regulations as of today. . . . (Tr. 9/11/07 at 29)
 I vote no also. As for me, I believe the hardship has not been proven in my mind. I also believe we asked the Town for an opinion on the turnaround. That was just that; it was an opinion. My opinion, I do not agree. I think it's an unsafe area. For those two reasons, I vote no. Id. at 29-30.
At the conclusion of the hearing, the Board denied the special use permit and dimensional variances by a vote of 2-3. Id. Appellants timely appealed the decision of *Page 7 
the Board within twenty days of the decision. The decision was dated September 25, 2007, recorded September 26, 2007, and the appeal was filed on October 16, 2007. Appellants timely sent their Notice of Appeal to the abutters on October 24, 2007, and filed their notarized Affidavit on November 15, 2007, which this Court has accepted.
In their appeal, Appellants seek a reversal of the Board's decision with regard to both the dimensional variances and special use permit. Appellants additionally seek an award of reasonable attorneys' fees pursuant to G.L. 1956 § 42-92-1, et. seq. On May 2, 2008, the Town moved to remand the decision to the Board, but the request was denied on May 30, 2008.
 II Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d), which provides in relevant part:
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the Appellant[s] have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or *Page 8 
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
The Supreme Court of Rhode Island requires this Court to "review[] the decisions of a . . . board of review under the `traditional judicial review' standard applicable to administrative agency actions."Restivo v. Lynch, 707 A.2d 663, 665 (R.I. 1998). Accordingly, the Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level." Id. at 665-66 (quotingLett v. Caromile, 510 A.2d 958, 960 (R.I. 1986)). In conducting its review, this Court "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'" Curran v. Church Community Housing Corp., 672 A.2d 453, 454
(R.I. 1996) (quoting § 45-24-69(d)).
In its review of a zoning board decision, the Court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Salve Regina College v. Zoning Bd. OfReview of City of Newport, 594 A.2d 878, 880 (R.I. 1991) (quotingDeStefano v. Zoning Bd. Of Review of Warwick, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979)). Rhode Island law defines "substantial evidence" as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. OfReview of North Kingston, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quotingCaswell v. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647
(R.I. 1981)). Nevertheless, a zoning board's decision may be vacated if it is clearly erroneous in view of the reliable, probative and substantial evidence contained in the whole record. *Page 9 Von Bernuth v. Zoning Bd. Of Review of Town of North Shoreham,770 A.2d 396, 399 (R.I. 2001).
 III The Board's Decision A Sufficiency of the Board's Decision
Shortly after Appellants filed their appeal, Appellee filed with this Court a motion to remand the case to the Board. The Board admitted in that motion that "the actual decision of the Board does not state clearly findings of fact which provide the basis for its decision." (Appellee's "Motion To Remand Decision To Zoning Board" at 2.) Based on concerns that a remand at that time might unduly prejudice the Appellants and waste valuable resources of the litigants and the judiciary, this Court denied Appellee's motion. However, because the sufficiency of the Board's decision directly informs this Court's resolution of this appeal, the Court will review its holding on that issue and discuss how that holding informs the instant decision.
Rhode Island law is well settled that a zoning board, "when acting in a quasi-judicial capacity, must set forth in its decision findings of fact and reasons for the action taken." Sciacca v. Caruso, 769 A.2d 578,585 (R.I. 2001) (quoting Irish Partnership, 518 A.2d at 358). Zoning boards are "required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review." Von Bernuth, 770 A.2d at 396-97 (quotingCranston Print Works Co. v. City of Cranston, 684 A.2d 689, 691 (R.I. 1996)). see Irish Partnership v. Rommel, 518 A.2d 356, 358 (R.I. 1986);see also May-Day Realty Corp. v. Board of Appeals of Pawtucket,107 R.I. 235, 239, 267 A.2d 400, 403 (1970); § 45-24-61 (requiring a zoning board to *Page 10 
"include in its decision all findings of fact. . . ."). Indeed, our Supreme Court has repeatedly admonished zoning boards for failing to issue detailed decisions and has directed zoning boards "to make certain that zoning-board decisions on variance applications (whether use or dimensional) address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief. . . ." Sciacca, 769 A.2d at 585. "Such a specification of evidence in the decision will greatly aid the Superior Court" noted our Supreme Court ". . . in undertaking any requested review of these decisions." Id. In assessing the sufficiency of zoning board findings, this Court "must decide whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, and applied the proper legal principles. Those findings must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany. These are minimal requirements. Unless they are satisfied, a judicial review of a board's work is impossible."Irish Partnership, 518 A.2d at 358-59 (quoting May-Day Realty,107 R.I. at 239, 267 A.2d at 403).
Here, the Board made a scant five findings of fact and apparently failed to apply any law to those findings. The Board's decision reports:
 That the property is 4,484 square feet (sic) Neighborhood Residential Zoning District with a Groundwater Overlay Zone 2.
 That the petitioner is attempting to construct a single family dwelling and requires relief from frontage.
 That the petitioner is also requesting relief from setbacks.
 That the proposed plan shows one side setback of 11.9' and a rear setback of 30.5' with 12' and 35' being required. That Boyer Street is a "paper street" without public street frontage, and, as such, is not a town-maintained road. (Decision at 1.) *Page 11 
The decision then goes on to conclude that:
 Based upon the above findings of fact The Zoning Board of Review, upon motion duly made and seconded, hereby denies the above-described relief by a vote of 3-2. The above stated relief has been denied by the board in accordance with Section 21-13 Zoning Board of Review procedures [sic] — Varances, special use permit [sic] and special permits [sic], as the zoning board finds that the applicant has not entered evidence into the record to the satisfaction of the applicable standards set forth in: Section 21-14.(a)(1-4) Additional procedures for variances, and Section 21-15.a(1-8) Additional procedures for special use permits and special permits. Id. (emphasis in original).
Examination of the five findings of fact further reveals that two of them merely repeat, in the vaguest terms possible, the type of relief sought by the Appellants, while the others merely parrot undisputed facts. Clearly then, the Board failed to satisfy even its most basic obligation to make "prerequisite factual determinations" or resolve evidentiary conflicts. Additionally, the Zoning Board failed to point to even a single fact when it concluded that "the applicant has not entered evidence into the record to the satisfaction of the applicable standards." (Decision at 1.) The Board's conclusory statement leaves it to the Court to guess which facts led the Board to its conclusion and why this is so. Thus, it is apparent from the text of the decision that the Board failed in its most basic duty to resolve evidentiary conflicts and determine the credibility of the witnesses before it. SeeZammarelli v. Beattie, 459 A.2d 951, 953 (R.I. 1983) ("under no circumstances could the terse denial of petitioners' application, without findings of fact, application of legal principles, or indeed, any reasonably decipherable statement of the board's conclusion, meet the standards that we have held previously").
Normally, "when the board fails to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper in the *Page 12 
circumstances." Irish Partnership, 518 A.2d at 359. As such, it would be appropriate to remand the case for further proceedings. SeeThibodeau v. Zoning Bd. of Review of City of Central Falls,108 R.I. 410, 413, 276 A.2d 283, 285 (R.I. 1971) (recognizing that "a literal reading of the zoning statute discloses the Legislature's intent to vest the Superior Court with jurisdiction to remand on its onw [sic]
initiative after consideration of the record as certified"). However, this Court previously denied the Board's "Motion to Remand," based upon the Court's finding that a remand would give the Board a second chance to make findings and, thus, be unduly prejudicial to Appellants by causing unreasonable delay and further litigation expenses.See Roger Williams College v. Gallison, 572 A.2d 61, 62-63 (R.I. 1990) (recognizing that although the Superior Court has "the authority to remand a case to the zoning board of review for further proceedings," such remand "should not be exercised in such circumstances as to allow remonstrants another opportunity to present a case when the evidence presented is initially inadequate . . ." rather "[t]he remand for further proceedings should be based upon a genuine defect in the proceedings in the first instance, which defect was not the fault of the parties seeking the remand"); see also, Lischio v. Zoning Board of NorthKingstown, 818 A.2d 685, 692. (R.I. 2003). Furthermore, the Rhode Island Supreme Court has held that where additional delay would be prejudicial or unjust, a zoning board's failure to comply with the requirements of § 45-24-61(a) warrants reversal if the court is unable to find sufficient grounds for its decision. See Hopf v. Board of Review of theCity of Newport, 102 R.I. 275, 289, 230 A.2d 420, 428 (1967);Lischio, 818 A.2d at 692. Thus, this Court concludes that the Board's failure to articulate its findings of fact and conclusions of law constitutes a decision made in excess of statutory authority, upon *Page 13 
unlawful procedure and affected by error of law. However, because of the unique procedural posture of this case, and because this Court also finds that it would be prejudicial to delay this case any further at this stage of the proceeding, the Court will examine the record on appeal in order to determine whether there is substantial evidence to support the Board's decision or whether the Appellants were substantially prejudiced by the Board's denial of the requested zoning relief.
 B Special Use Permit
The Appellants argue that the decision of the Zoning Board denying the requested special use permit was made in violation of constitutional, statutory, or ordinance provisions, is clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record, and is arbitrary or capricious and characterized by abuse of discretion such that it has prejudiced their substantial rights. Specifically, the Appellants contend that the Board relied on a clearly erroneous reading of Ordinance § 21-311(h) to deny the special use permit based on the fact that the subject property did not comply with the size requirements of the chapter. Appellants further contend that they presented substantial evidence to the Board demonstrating that they were entitled to the relief requested, and that the Board's decision was contrary to the reliable, probative, and substantial evidence of the whole record such that it is arbitrary, capricious, and characterized by abuse of discretion. In response, the Board contends that criteria for the special use permit sought by Appellants require the subject property to conform to the Ordinance's size requirements. The Board also contends that its decision is supported by substantial evidence because Appellants failed to meet their burden to demonstrate that the proposed use would not alter the general character of the surrounding area. *Page 14 
The Rhode Island Zoning Enabling Act of 1991, §§ 45-24-27 to 45-27-72, requires the State's municipalities to establish the criteria for conditionally permitted uses in a particular zone and to issue special use permits authorizing the use of a particular property in accordance with those criteria. North Kingstown has employed that authority to establish the general criteria applicable to all special use permits in the Town. (See Ordinance § 21-15.) One of the special use permits authorized by the Town relates to the use of non-conforming lots. The Appellants seek a special use permit under Ordinance § 21-311(h) in order to construct a single family residential dwelling. Section 21-311(h) provides in pertinent part that:
 If a nonconforming lot or a lot resulting from the combining or the combining and replatting of two or more contiguous lots in accordance with subsection (e) of this section does not comply with the applicable frontage and/or depth requirements of subsection (g) of this section or if a lot created or altered prior to January 1, 1980, in reliance on a decision of the zoning board of review purporting to authorize the creation or alteration thereof, complies with the size requirement of this chapter but does not comply with the frontage and/or depth requirements of this chapter, the zoning board of review may grant a special exception authorizing the erection of a single-family dwelling on such lot in accordance with section 21-15 only if, in addition to the findings required by such subsection, it is also established by specific finding that:
 (1) The siting of the dwelling and any accessory building proposed to be erected on such lot, together with the means of access to the dwelling site, will be in accordance with a site plan which has, prior to the granting of such special exception, been approved by the department of planning and development, to ensure that the findings made in accordance with section 21-15 will be implemented; and
 (2) There is an adequate means of vehicular and utility access to such dwelling site from a public road either over the lot itself or by virtue of an easement conveyed to the owner or former owner thereof for the benefit of such lot and all subsequent owners and occupants thereof. *Page 15 
 However, this subsection shall not be construed to authorize the zoning board of review to grant relief from the size, frontage or depth requirements of this chapter with respect to any lot created or altered by a plat or deed recorded on or after July 28, 1947, which was not when created or after such alteration in full compliance with the size, frontage and depth requirements of the zoning ordinance in effect at the time of such recording other than a lot created or altered prior to January 1, 1980, in reliance on a decision of the zoning board of review, which purported to authorize the creation or alteration of such lot and which was predicated upon a petition to the zoning board of review which covered the tract of land out of which such lot was created or such lot prior to alteration . . .
The Appellants argue that § 21-311(h) should be read to empower the Zoning Board to issue special use permits in either of two situations: where "a nonconforming lot or a lot resulting from the combining . . . of two or more contiguous lots in accordance with subsection (e) of this section does not comply with the applicable frontage and/or depth requirements of subsection (g) of this section . . ." or where "a lot created or altered prior to January 1, 1980, in reliance on a decision of the zoning board of review purporting to authorize the creation or alteration thereof, complies with the size requirement of this chapter but does not comply with the frontage and/or depth requirements of this chapter. . . ." Under the Appellants' reading, therefore, the phrase "complies with the size requirement of this chapter" applies only to the second category — lots "created or altered prior to January 1, 1980. . . ." (See section 21-311(h).) If Appellants are correct, then a special exception is available for a lot which does not comply with the size requirements, as long as such a lot is "a nonconforming lot or a lot resulting from the combining . . . of two or more contiguous lots. . . ." See id. *Page 16 
In contrast, the Board contends that the Ordinance is more appropriately construed to allow relief in either the case of "a nonconforming lot or a lot resulting from the combining . . . of two or more contiguous lots in accordance with subsection (e)" or where, "a lot [was] created or altered prior to January 1, 1980, in reliance on a decision of the zoning board of review purporting to authorize the creation or alteration thereof" provided that in either case the property at issue "complies with the size requirement of this chapter but does not comply with the frontage and/or depth requirements of this chapter. . . ." Under the Board's reading, therefore, the phrase "complies with the size requirements of this chapter" applies to both categories of lots under § 21-311(h). If the Board is correct, then a special exception is never available unless the lot at issue complies with the size requirements of the Ordinance.
It is well settled that "the rules of statutory construction apply equally to the construction of an ordinance." Mongony v.Bevilacqua, 432 A.2d 661, 663 (R.I. 1981) (citing Town of Warren v.Frost, 111 R.I. 217, 222, 301 A.2d 572, 575 (1973), and Nunes v. Town ofBristol, 102 R.I. 729, 737, 232 A.2d 775, 780 (1967)). This Court reviews questions of statutory interpretation de novo. Palazzolo v.State ex rel. Tavares, 746 A.2d 707, 711 (R.I. 2000). "If the statute is clear and unambiguous, [the Court] must enforce it as written by giving the words of the [ordinance] their plain and ordinary meaning."Ruggiero v. City of Providence, 893 A.2d 235, 237 (R.I. 2006). However, where, as here the provisions of a statute are ambiguous or unclear the Court must engage in an exercise of statutory interpretation in order to determine the intent of the legislature. See Bassett v. DeRentis,446 A.2d 763, 763 (1982). This Court is mindful that, in Rhode Island, the construction given to an ambiguous statutory provision by the agency, or board, charged *Page 17 
with its enforcement is entitled to some deference, as long as that construction is not clearly erroneous or unauthorized. Flather v.Norberg, 119 R.I. 276, 283 n. 3, 377 A.2d 225, 229 n. 3 (1977). However, a zoning board's determinations of law "are not binding on the reviewing court; they `may be reviewed to determine what the law is and its applicability to the facts.'" Gott v. Norberg, 417 A.2d 1352, 1361 (R.I. 1980) (quoting Narragansett Wire Co. v. Norberg, 118 R.I. 596, 607,376 A.2d 1, 6 (1977)). Furthermore, interpretation of an ambiguous ordinance "is grounded in policy considerations" and Rhode Island Courts will "not apply a statute in a manner that will defeat its underlying purpose."Arnold, 822 A.2d at 169. Additionally, "the true measure of a court's willingness to defer to an agency's interpretation of a statute `depends, in the last analysis, on the persuasiveness of the interpretation, given all the attendant circumstances.'" UnistrutCorp., 922 A.2d at 101 (quoting United States v. 29 Cartons of anArticle of Food, 987 F.2d 33, 38 (1st Cir. 1993)).
The Rhode Island General Assembly, through § 45-24-38, guarantees the right of property owners to develop substandard lots of record. That section provides:
 Any city or town adopting or amending a zoning ordinance under this chapter shall regulate the use or uses of any single substandard lot of record or contiguous lots of record at the effective date of adoption or amendment of the zoning ordinance notwithstanding the failure of that lot or those lots to meet the dimensional and/or quantitative requirements, and/or road frontage or other access requirements, applicable in the district as stated in the ordinance. Provisions may be made for the merger of contiguous unimproved, or improved and unimproved, substandard lots of record in the same ownership to create dimensionally conforming lots or to reduce the extent of dimensional nonconformance. The ordinance shall specify the standards, on a district by district basis, which determine the mergers. The standards include, but are not to be limited to, the availability of infrastructure, the *Page 18 
character of the neighborhood, and the consistency with the comprehensive plan.
With this policy in mind, the Court turns to consideration of the Ordinance. Here, the Ordinance twice specifies the types of lots that "do[] not comply with the applicable frontage and/or depth requirements of subsection" eligible for relief — once with respect to "nonconforming lot[s] or . . . lot[s] resulting from the combining or the combining and replatting of two or more contiguous lots" — and again with respect to "lot[s] created or altered prior to January 1, 1980, in reliance on a decision of the zoning board of review purporting to authorize the creation or alteration thereof." (Section 21-311(h).) In interpreting a statute, Courts are to give effect to every word and "shall not delete or ignore words as surplusage when reading the statute as a whole."Mikaelian v. Drug Abuse Unit, 501 A.2d 721, 723 (1985) (citingRhode Island Chamber of Commerce v. Hackett, 411 A.2d 300 (1980)). Thus, the repeated specification that the Ordinance applies only to lots which do "not comply with the applicable frontage and/or depth requirements" strongly militates against a construction that would require non-conforming lots to comply with the chapter's size requirements. If the Town Council had intended for the size requirement to apply to both non-conforming lots and lots "created or altered prior to January 1, 1980, in reliance on a decision of the zoning board" it could have achieved that result simply by grouping both of those classifications together and only then specifying the conditions under which they qualified for relief. Furthermore, under either possible construction a "lot created or altered prior to January 1, 1980, in reliance on a decision of the zoning board of review purporting to authorize the creation or alteration thereof," must, in order to qualify for relief under the plain language of the ordinance, "compl[y] with the size requirement of this chapter. . . ." Here, if the *Page 19 
requirement that the property must comply with the chapter's size requirements were held to pertain not only to lots created prior to 1980 in reliance on a decision of the Zoning Board purporting to authorize its creation but to non-conforming lots as well, then the portion of the Ordinance denying the Board the authority to "grant relief from thesize, frontage or depth requirements of this chapter" with respect to properties that were made non-conforming by the owners' actions after July 28, 1947, would be rendered a nullity. As such, the Ordinance, when read as a whole, cannot support the interpretation advanced by the Town. Thus, this Court concludes that the Board's interpretation of the Ordinance is clearly erroneous and that the Ordinance empowers the Zoning Board to grant a special use permit to construct a single-family residential home on all prior existing non-conforming lots where the requirements of § 21-15 and § 21-311(h)(1) and (2) are satisfied.
Turning then, to the evidence before the Board, in the document entitled "project Summary" and dated June 7, 2007 the Town's Department of Planning and Development approved the Appellants' site plan. Thus, it is beyond question that the § 21-311(h)(1) requirement of Planning and Development approval is satisfied. With respect to the § 21-311(h)(2) requirement that there be "an adequate means of vehicular and utility access to such dwelling site from a public road either over the lot itself or by virtue of an easement conveyed to the owner or former owner thereof for the benefit of such lot and all subsequent owners and occupants thereof," the Applicants introduced evidence that the access to the site was over an easement and presented a letter from the Town's Principal Planner, John P. Hansen, Jr., indicating that he, the Town Engineer and the Town's Fire Marshal had visited the site of the proposed construction and that "the Fire Department is *Page 20 
already responsible for accessing [the Boyer Street] homes and they would be able to access the subject property as well."
Despite this opinion from the Town's own three professional experts, at least one of those Board members opposed to granting the requested relief found that the access was inadequate for emergency vehicles to access the site. In explaining his no vote, Chairman Pierhal said "I also believe we asked the Town for an opinion on the turnaround. That was just that; it was an opinion. My opinion, I do not agree. I think it's an unsafe area . . . I vote no." Id. at 29-30. Yet, in rejecting the experts' opinion those opposed to the relief can point to no probative evidence to support their opinion that the area is unsafe and would not be accessible to emergency vehicles.
While it is generally true that "there is no talismanic significance to expert testimony [and it] may be accepted or rejected by the trier of fact," Restivo, 707 A.2d at 671, it is equally true that, if expert testimony before a zoning board is competent, uncontradicted, and unimpeached, it would be an abuse of discretion for a zoning board to reject such testimony. See Bonitati Bros., Inc. v. Zoning Board ofReview of Cranston, 99 R.I. 49, 55, 205 A.2d 363, 366-67 (1964). Of course, expert testimony is not somehow exempt from being attacked.[6]
Where, "however, the record is devoid of any indication that [the] expert opinion was attacked or impeached . . . that expert testimony necessarily must carry the day." Murphy v. Zoning Bd. of Review of Townof South Kingstown, 959 A.2d 535, 453 (R.I. 2008). *Page 21 
Additionally, while the Zoning Board's decision fails to refer to any facts supporting the denial, based on his statements after voting to deny the requested relief, it is clear that Chairman Pierhal, concluded that the public safety vehicle turnaround was inaccessible and unsafe. Chairman Pierhal declared: "I also believe we asked the Town for an opinion on the turnaround. That was just that; it was an opinion. My opinion, I do not agree. I think it's an unsafe area." How he arrives at that opinion is completely absent from the record. It is possible that he based his opinion on something he observed on the Board's site visit; however, if this is the case, the record before the Court contains no testimony or evidence to that effect. When a zoning board's decision relies upon one or more board members' special knowledge of a local area or condition, the board's decision reflecting its "special knowledge will not be upheld . . . unless the record reveals the underlying facts or circumstances the board derived from its knowledge of the area."DeStefano v. Zoning Board of Review of Warwick, 122 R.I. 241, 247,405 A.2d 1167, 1171 (1979). Thus, the Chairman's concealed observations, if any, cannot form a competent basis on which to vote to deny relief.
Having discounted the personal but undisclosed observations of the Board members, the remaining evidence that the Board points to as supporting its decision is the testimony of Christine Griffith, Ken Raposa, and Dale Grogan. These three individuals all testified to the generally poor road conditions on Boyer Street. Their testimony, however, did not contradict the expert testimony. The experts' opinions did not indicate that the road condition was good, but merely provided that the property was accessible. Thus, the testimony as to the condition of the road cannot reasonably be said to challenge the experts' accessibility determination. The only specific evidence which could have *Page 22 
possibly been construed as an attack on the expert opinions of the Town's Planner, Engineer, and Fire Marshal was the testimony by Mr. Griffith that the turn-out is inadequate for emergency vehicles and that in a recent emergency, he was blocked in his driveway by vehicles. However, this testimony is also insufficient to overcome the experts' opinions.
In Salve Regina College v. Zoning Bd. of Review of City ofNewport, our Supreme Court pointed out that "the proposition has been well settled in this jurisdiction since 1965 that the lay judgments of neighboring property owners on the issue of the effect of the proposed use on neighborhood property values and traffic conditions have no probative force in respect of an application to the zoning board of review for a special exception." 594 A.2d 878, 882 (R.I. 1991) (quotingToohey v. Kilday, 415 A.2d 732, 737 (1980)). Like traffic patterns and property values, the technical aspects of emergency services are highly specialized, and the opinions of lay property owners cannot be said to have any probative force. If the Fire Marshal indicates that the emergency vehicles can access the site, then lay neighbors' testimony to the contrary cannot reasonably be credited. Likewise, although Mr. Griffith may have been blocked into his driveway, that fact is not inconsistent with the expert testimony that emergency vehicles will be able to access the Property as required by the Ordinance. Citizens may often be stuck in a parking spot or driveway while emergency crews maneuver or park their vehicles to respond to a pending emergency. But as long as the emergency crews have access to the site of the potential emergency, as they do here, the requirements of § 21-311 (h)(2) are satisfied. Thus, based on the record, this Court finds that the Appellants presented substantial probative and reliable evidence to the Zoning Board that *Page 23 
the application satisfied the criteria of Ordinance § 21-311(h). The Court also finds that Appellee can point to absolutely no probative evidence to support any contrary finding.
Turning then, to consideration of the § 21-15 criteria, § 21-15 of the Ordinance provides:
 Additional procedures for special use permits and special permits.
 (a) In granting a special use permit or special permit under this chapter, the zoning board of review shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 (1) The requested special use permit will not alter the general character of the surrounding area or impair the intent or purpose of this chapter or the comprehensive plan upon which this chapter is based.
 (2) The special use permit is reasonably necessary to serve the public convenience and welfare.
 (3) The granting of a special use permit will not pose a threat to the drinking water supply.
 (4) The use will not disrupt the neighborhood or the privacy of abutting landowners by excessive noise, light, glare or air pollutants.
 (5) Sewage and waste disposal into the ground and the surface water drainage from the proposed use will be adequately handled on site.
 (6) The traffic generated by the proposed use will not cause undue congestion or introduce a traffic hazard to the circulation pattern of the area.
 (7) Accessory signs, off-street parking and loading area and outdoor lighting are designed and located in a manner which complements the character of the neighborhood.
 (8) In addition to the criteria in subsections (1) through (7) of this section, in the case of a special permit, the board shall require evidence that the requested use will have a lesser undesirable impact upon the surrounding area than the preceding nonconforming use.
 (b) Special use permits and dimensional variances. The zoning board of review may issue a dimensional variance in conjunction with a special use. If the special use could not exist without the dimensional variance, the zoning board of review shall consider the special use permit and the dimensional variance together to determine if granting *Page 24 
the special use is appropriate based on both the special use criteria and the dimensional variance evidentiary standards. (Ordinance No. 94-12, § 1, 6-27-1994; Ordinance No. 02-14, § 2, 10-7-2002)
Appellants argue that sufficient evidence was presented to the Board that their application satisfied the special use permit criteria. In response, the Board asserts that the Appellants failed to prove the first prong of the § 21-15 criteria, namely that the requested special use permit would not alter the general character of the surrounding area or impair the intent or purpose of the Ordinance. (See Ordinance § 21-15(a)(1).)
At the public hearing on the application, Pimental's unimpeached testimony established that the total land area of the lot is 4848 square feet with a home square footage of 1400, slightly smaller but still consistent with the neighborhood average of 1624 square feet. He further testified that currently, there are a number of homes in the neighborhood that are smaller in size, that a few of the non-conforming vacant lots in the area could also be developed into smaller homes in the future and that all of the lots in the neighborhood have less land area than required in the R-40 zone and Zone 2 Groundwater Protection Overlay District. Additionally, he testified that the proposed lot coverage is sixteen percent while the neighborhood average is twelve percent.
Rather than seek to discredit or undermine Pimental's testimony, the Board argues that the testimony of Christine Griffith, Ken Raposa, and Dale Grogan, who all testified to the poor road conditions on Boyer Street, somehow constitutes substantial evidence upon which the Board was entitled to rely in reaching a determination that the proposed special use was out of character with the surrounding area. No doubt, the Board was concerned about the road conditions. Indeed, in explaining their decision, each of the *Page 25 
Board members who opposed the application cited the condition of the road as a factor in their denial.
The Board's reliance on the condition of the road to reject the Appellants request for zoning relief is legally problematic for at least two reasons. While the focus on increased traffic and road usage is proper as a target of the § 21-15(6) inquiry into whether the proposed use would "cause undue congestion or introduce a traffic hazard to the circulation pattern of the area" it is not, as the Board contends, the appropriate target of the § 21-15(1) inquiry about the character of the neighborhood unless the proposed use would result in such an intensification in the local traffic pattern that it would result in an incongruous use of the property with the surrounding neighborhood.See, e.g., Staller v. Cranston Zoning Board of Review, 100 R.I. 340,340, 215 A.2d 418, 418 (1965) (abuse of discretion for zoning board to approve a special use permit to site a thirty-two unit apartment building in a neighborhood "restricted by law and in fact to single-family dwellings"). Thus, for example, if the applicants proposed to use the Property as a shipping depot, the Board addressing that application might properly consider the corresponding increase in trucking traffic through the residential neighborhood as producing a use incompatible with the surrounding neighborhood and, in all likelihood, incompatible with a comprehensive plan that envisions a neighborhood retaining a residential character.
Moreover, even when considered within the context of the § 21-15(6) consideration about traffic conditions, the condition of the road is a factor common to any development on Boyer Street. Land owners are not expected to keep their land vacant and are entitled to make beneficial use of their property. See Johnson Wales College *Page 26 v. DiPrete, 448 A.2d 1271 (1982). Thus because any development from the present open land will result in some intensification in the use of the road the mere fact of an increase in traffic is not independently significant unless it can be established that the increased usage of the road, were the property to be developed into a single-family residential dwelling, would somehow result in an intensification in the use of the road over and above the development of another viable use for the property.
Our Supreme Court has long held that a special use permit cannot be denied on the ground that a particular condition would arise if the special use permit were granted, when that condition would occur equally with a permitted use. Center Realty Corp. v. Zoning Bd. of Review,96 R.I. 482, 486, 194 A.2d 671, 673 (1963). In Center RealtyCorp., the applicant sought a special use permit to build a gas station but was denied because the station would have resulted in an increase in left turns out of the property, leading to hazardous traffic conditions.Id. at 484, 194 A.2d at 672. However, the traffic expert the Board relied upon in making its conclusion, testified that "a similar increase in the number of such left turns would accompany the operation of any other permitted use on petitioner's parcel." Id. On appeal, Our Supreme Court held that the increase in left hand turns had no probative force because:
 It tends to establish, in our opinion, that the conduct of a use permitted on the parcel in question under the terms of the ordinance would generate a need for making left-hand turns in traffic and results in an increase in traffic hazards. This then would establish only that a granting of the exception sought would result in a condition that was within the contemplation of the city council when it provided for the permitted uses that could be conducted on the parcel under consideration, a condition that cannot be viewed reasonably as adversely affecting the convenience and welfare of the public when it results from the granting *Page 27 
of an exception set out in the ordinance. Id. at 486, 194 A.2d at 673.
Thus, where the increase in traffic would flow from any use of the property, the mere fact that it also results from a special use is not probative evidence which a zoning board can use to deny a special use permit. Likewise, here any use of the Property would result in an increase in the use of the road but the mere increase in usage common to any development on the parcel cannot support the Board's decision unless that usage would result in an intensification above and beyond that which would be seen based on any beneficial use of the Property.
Accordingly, the Court finds that because the use proposed here is a single-family residential dwelling in a neighborhood of single-family residential dwellings, the Board erred in allowing its opinion to be swayed by the non-probative evidence of the increase in traffic caused by a single-family residential dwelling. Such an increase would have been the result of any development on the site, and the purpose of applying for a special use permit was only to ensure that development would not be harmful to the surrounding community — not to approve the unquestionably appropriate use of a single-family residential dwelling on the site. Accordingly, the Court finds that the Appellants produced substantial evidence demonstrating that the proposed use was in concert with the surrounding area and comprehensive plan. The Court also finds that the Board failed to point to substantial evidence in support of its contention that the proposed use of the property as a single-family residential dwelling would result in an impermissible increase in traffic. Therefore, the Court holds that the Board's decision regarding traffic conditions was clearly erroneous in light of the substantial evidence of the record. *Page 28 
Review of the record for evidence satisfying the remaining special use criteria reveals that the Appellants produced substantial, uncontradicted evidence in favor of their application for a special use permit and that substantial competent evidence supporting the Board's determination is utterly lacking. By contributing to the available housing stock and increasing the diversity of housing opportunities in the community, the permit is reasonably necessary to serve the public convenience and welfare. In order to ensure that the Town's water supply is not harmed and the sewage and surface water are handled adequately on site, the Appellants sought and obtained Department of Environmental Management permission to install an ISDS system and have drafted the plans to deal with surface water runoff on-site. Again, adopting the baseline that the intensification is not to be based on the current, vacant lot, but rather based on any permitted use of the site, it is clear that a single-family home will cause less disruption and traffic than any other potential use. The Property would have no accessory signs, loading areas, or outdoor lighting and would have off-street parking in accordance with the plan submitted to and approved to the department of planning and development. Finally, because the Property is currently undeveloped, the requirement of § 21-15(8) is inapplicable because the Property does not currently possess a non-conforming use.
Accordingly, because the record before this Court fails to reveal those underlying facts which influenced the Board's decision, and because in reviewing the record this Court cannot find substantial competent evidence supporting the Board's decision — but does find substantial competent evidence supporting the Appellants' request for a special use permit — this Court finds that the decision of the Zoning Board denying Appellants' requested relief from the literal terms of the North Kingstown Zoning Ordinance was *Page 29 
made in violation of constitutional, statutory, or Ordinance provisions, is clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record, and is arbitrary or capricious and characterized by abuse of discretion such that it has prejudiced substantial rights of the Appellants.
 C The Variances
The Property at issue is located in a NR/R-40 Zoning District and a Groundwater Overlay Zoning District. Under Ordinance Article IV Dimensional Regulations — Table 2A Residential Districts, in order to build a one-family dwelling on a lot in the NR/R-40 Zoning District the lot must have an area of 40,000 square feet, depth of 200 feet, frontage of 180 feet, lot width of 180 feet, and side yard/rear yard setbacks of 35 feet. Furthermore, based on the lot's presence within the Groundwater Overlay Zoning District, any use is permitted provided that "the average density of any residential development shall not exceed one dwelling unit per two acres." Section 21-186. Because the lot is too small to meet these requirements, the Appellants sought dimensional variances to bring their proposed development into conformity with the requirements of the Ordinance. As proposed, the Property would have 9 feet and 11 feet for its interior side setbacks and a rear setback of 30.5 feet where 35 feet is required. In addition, because the Property fronts onto Boyer Street, which is a paper street, the Property yields a frontage of zero feet[7] and a depth of 98 feet. Appellants contend that they should be permitted to seek a variance from the side and rear setbacks, the frontage and depth requirements, and the density requirements of Table 2A and § 21-186. *Page 30 
 1 The Variance Standard
North Kingstown Zoning Ordinance § 21-14 mirrors § 45-24-41 and establishes the requirements that must be met in order for the Board to issue variances. Section 21-14 provides:
 (a) Criteria for grant of variance. In granting a variance to this chapter, the zoning board of review shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 (1) The hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not the general characteristics of the surrounding area, and is not due to a physical or economic disability of the applicant.
 (2) The hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain.
 (3) The granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of this chapter or the comprehensive plan upon which this chapter is based.
 (4) The relief to be granted is the least relief necessary.
 (b) Evidence required for grant of variance. The zoning board of review shall, in addition to the standards in subsection (a) of this section, require that evidence be entered into the record of the proceedings showing that:
 (1) In granting a use variance, the subject land or structure cannot yield any beneficial use if it is required to conform to the land use sections of this chapter. Nonconforming use of neighboring land or structures in the same district and permitted use of lands or structures in an adjacent district shall not be considered in granting a use variance; and
 (2) In granting a dimensional variance, the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief. (Ordinance No. 94-12, § 1, 6-27-1994; Ordinance No. 02-14, § 1, 10-7-2002) *Page 31 
Appellants contend that the Town's decision denying the requested dimensional variances substantially prejudiced their rights and was made (1) In violation of constitutional, statutory, or ordinance provisions; (2) In excess of the authority granted to the zoning board of review by statute or ordinance; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; and is (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Specifically, Appellants assert that the decision of the Zoning Board is clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record, and that despite seeking dimensional variances subject to theViti Doctrine's "more than a mere inconvenience" standard, [8] the Board evaluated the application against the more stringent loss of all beneficial use standard applicable to use variances. The Board, for its part, does not address this issue in its briefing and apparently concedes that the variance requests should have been assessed under the more than a mere inconvenience standard.[9] *Page 32 
In Rhode Island, a zoning board's failure to apply the correct legal standard to its deliberations constitutes an error of law sufficiently prejudicial to an applicant's rights so as to warrant reversal.See Hugas Corp. v. Veader, 456 A.2d 765, 770 (R.I. 1983) ("trial justice erred in upholding the board's utilization of the variance standard and in not remanding the case for reconsideration under the special-exception standard"); see also Von Bernuth, 770 A.2d at 402
(trial justice erred in upholding zoning board's decision where the decision included no discussion of the hardship or reasonable alternative factors under § 42-24-41(d)(2) and where "there is no evidence that the zoning board considered or applied the statutory requirement, given that the statute is not acknowledged in the zoning board's decision"). However, the Board argues that even under theViti standard the Appellants failed to satisfy their burden of proof with respect to the third dimensional variance prong requiring the applicant to prove that "[t]he granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of this chapter or the comprehensive plan upon which this chapter is based. In light of this case's unique procedural posture, the Court will, as it did with the Appellants' application for a special use permit, examine the record to determine whether substantial evidence exists to support the Board's decision or whether, *Page 33 
considering the evidence in light of the appropriate standard, the Appellants were entitled to their requested zoning relief.
Before turning to the merits of the Appellants' various dimensional variance requests, the Court notes that in addition to seeking variances for the frontage, depth, width, and setback requirements, the Appellants cautiously seek a variance from the density restriction of the groundwater protection area. The restriction on density in the groundwater protection overlay is contained in Ordinance § 21-186(d) which provides in pertinent part:
 d) Permitted uses in zone 1 and zone 2 groundwater protection areas. Permitted uses in zone 1 and zone 2 groundwater protection areas are any uses permitted in the primary zoning district, provided that:
 (1) The average density of any residential development shall not exceed one dwelling unit per two acres and the use is not prohibited in table 1 in subsection (h) of this section. No density bonuses shall be granted in groundwater protection areas.
 . . . (3) On residential lots that are nonconforming by area (square footage) and where municipal sewers are not available, for all new construction, alteration, additions, expansions, enlargements or intensifications for which the state department of environmental management determines that an upgrade to the individual sewage disposal system is required, the upgraded system must include the installation of a nitrogen reducing septic disposal system for on-site treatment of wastewater approved by the state department of environmental management.
However, § 21-186(i) provides in relevant part that:
 [N]othing contained in this section shall affect the minimum dimensional requirements for size of any lot which is a lot of record, the dimensions of which have not been altered since the creation by voluntary conveyance which rendered such lots more nonconforming and which was created by the following: *Page 34 
 (1) A deed or plat recorded on or after July 28, 1947, and which was in full compliance with the minimum dimensional requirements for size of the zoning ordinance in effect at the time of such recording; or
 (2) A deed or plat recorded prior to July 28, 1947.
Under the North Kingstown Zoning Ordinance:
 Nonconformance means a building, structure or parcel of land or use thereof lawfully existing on the effective date of the ordinance from which this chapter derives or the amendment of this chapter and not in conformity with the provisions of this chapter or amendment. Nonconformance shall be of only two types as follows:
 (1) Nonconforming by use means a lawfully established use of land, building or structure which is not a permitted use in that zoning district. A building or structure containing more dwelling units than are permitted by the use regulations of this chapter shall be nonconforming by use; or
 (2) Nonconforming by dimension means a building, structure or parcel of land not in compliance with the dimensional regulations of this chapter. Dimensional regulations include all regulations of this chapter, other than those pertaining to the permitted uses. A building or structure containing more dwelling units than are permitted by the use regulations of this chapter shall be nonconforming by use; a building or structure containing a permitted number of dwelling units by the use regulations of this chapter, but not meeting the lot area per dwelling unit regulations, shall be nonconforming by dimension. Section 21-22.
Thus, because the Property in question consists of a lot which is a lot of record, the dimensions of which have not been altered since their creation by a voluntary conveyance which rendered such lots non-conforming and which was created by a deed or plat recorded prior to July 28, 1947, by its plain language § 21-186(i) operates to exclude the Appellants' property from the two acre lot size requirements of § 21-186(d). *Page 35 
 2 The dimensional variances
Appellants assert that the Zoning Board ignored the record and testimony presented, and, consequently, made a decision based on personal preference and not upon the application of law to the facts of this case. In response, the Board asserts that the applicants failed to prove that they were entitled to a dimensional variance. In particular, argues the Board, the Appellants failed to prove the requirement of the third prong — that their proposed development would not alter the character of the surrounding neighborhood or hinder the goals of the North Kingstown comprehensive plan.
It is clear from a review of the proceedings before the Zoning Board that the Appellants produced sufficient evidence to establish their entitlement to the requested variances. As to the first prong — that the hardship is due to the unique characteristics of the land — the applicants seek permission to make use of their property by constructing a single-family residential dwelling whose placement on the Property is limited by the land itself. The sloped topography of the Property dictates the location of the dwelling placement. Additionally, the ISDS system must be located in a place approved by DEM based on the features of the land, thus further restricting the possibility of developing the lot in alternative ways. Because the land itself has imposed these constraints on development, it is clear that the hardship is due to the unique characteristics of the land and not the general characteristics of the surrounding area or any physical or economic disability of the applicants.
As to the second prong — that the hardship is not the result of any prior action of the applicants and does not stem primarily from the desire of the applicants to realize greater financial gain — it is well settled in this jurisdiction that purchase of a property, *Page 36 
subject to zoning restrictions but otherwise entitled to a variance, does not constitute the sort of self inflicted hardship capable of defeating a property owner's interest in making valuable use of their property. See DeStefano, 122 R.I. at 248, 405 A.2d at 1171 (citingDenton v. Zoning Board of Review, 86 R.I. 219, 223, 133 A.2d 718, 720
(1957) ("Finally, we observe that both the respondent and the trial court also relied upon the fact that the petitioners allegedly knew that the lot in question was undersized at the time they made the purchase. This factor cannot be employed as support for the denial of an application."). To find otherwise would be to undermine the fundamental policy that fee simple interests in property are freely alienable and destroy the ability of the market to ensure property is dedicated to its highest and best use. See Denton v. Zoning Board of Review, 86 R.I. 219,223, 133 A.2d 718, 720 (1957) (applicant's entitlement to a variance to build a house on undersize lot "[i]n no way dependent upon his knowledge or lack of knowledge of the existence of zoning restrictions affecting the land" at time of purchase). Thus, this Court finds that the Appellants satisfied their burden with respect to the second prong.
Turning to the third prong — that the variances will not alter the general character of the area — Appellants argue that the evidence affirmatively established that the proposed development would be in keeping with the character of the surrounding area and, in fact, would further the Town's zoning scheme and comprehensive plan. Therefore, Appellants argue that the Board ruled arbitrarily in determining that the issuance of the requested variances would alter the general character of the surrounding area or impair the intent or purpose of the Ordinance and comprehensive plan. In response, the Board contends that it was entitled to credit the testimony of the neighbors *Page 37 
pointing out that the lot is undersized and to reach its own conclusion regarding the facts brought forward by the experts.
Rhode Island Law is clear that the failure of a lot to meet the minimum land area requirement is not a sufficient reason to deny a variance, when the lot's small size is the very reason for seeking an area variance. See Von Bernuth, 770 A.2d at 396. Furthermore, in passing on the requirements for a dimensional variance it is error for a zoning board to focus on the use of the property itself rather than the extent and nature of the requested relief. See Lischio, 818 A.2d at 692. This is so even where the surrounding area is made up of one particular type of use because "a legislative determination has been made previously that the use is appropriate and does not adversely affect the general character of the area." Id. at 693.[10] In other words, the Town Council's previous determination in zoning a particular area to include whatever uses are permitted acts as a conclusive determination that the particular use will not negatively impact the character of the surrounding area. Id. Although in the instant case the question of use may be brought in under the Board's duty to consider variance requirements with the special use criteria, as has already been discussed, the use here is one which is permitted in every residential zone of the Town and which requires zoning permission only because of the undersized lot on which it is to be build. Thus, when a board collects evidence addressing the § 45-24-41I(3) requirement "[t]hat the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose *Page 38 
of the zoning ordinance or the comprehensive plan upon which the ordinance is based," the Board's focus must be on scope and not use.
Examples of the type of scope that would be so excessive as to "alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan" include "requests for a height variance for a permitted use [that] would result in a structure so massive or out of place as to alter the general character of the surrounding area" or "a side-yard variance that would eliminate the front yard or sidewalk in a residential neighborhood, a result completely incompatible with the surrounding parcels."Lischio, 818 A.2d at 693. In contrast, the Lischio court found that "A dimensional variance for road frontage for an otherwise landlocked lot is not of such size or degree that it would adversely impact the surrounding neighborhood or impair the intent of the zoning ordinance, it merely reduces the frontage necessary to obtain access to a public street." Id.
Here, as was previously addressed, it is undisputed that the character of the surrounding neighborhood is residential. It is comprised of residential single-family homes. The proposed dwelling is consistent with the average footprint, number of stories and bedrooms and building coverage of the surrounding properties. As has already been discussed, the total land area of site is 4848 with home square footage of 1400, slightly less but still consistent with the neighborhood average of 1624. Indeed, there are a number of homes in the neighborhood that are smaller in size. Furthermore, the proposed lot coverage is sixteen percent while the neighborhood average is twelve percent. Notably,all the lots in the neighborhood have less land area than required in the R-40 Zoning District and Groundwater Overlay Zoning District. Thus the proposed dwelling, *Page 39 
with characteristics that keep it well within the range of neighborhood homes, cannot reasonably be considered out of character with the neighborhood simply because it is to be built on a substandard lot — particularly so where all neighborhood homes are constructed on substandard lots. (See Pimental Report at 3-5.) Thus, it is clear that the Appellants satisfied their burden with respect to this prong and that the Board cannot point to substantial evidence in support of its decision.
Finally, as pertains to the requirement that the relief granted be the least relief necessary, here based on the location of the Property within the RM district and the groundwater overlay, the relief sought will only allow the Property to be the site of a single-family residential dwelling. During the hearing, Morehead testified that in order to obtain DEM permission to install an ISDS the Property had to have two bedrooms. Though the requested variances are fairly extensive, without the benefit of the yard width and yard setback variances, the Property would lie dormant, unable to be put to any use other than as open space. Indeed, in light of the overwhelming evidence supporting the need for zoning relief and the utter dearth of evidence contradicting that conclusion, the Court is compelled to note that the Appellants would have been entitled to the requested relief even applying the more stringent all beneficial use standard applicable to use variances. This is so, because based on the zoning restrictions placed on the land, the Appellants would never be able to satisfy any dimensional requirement for a legally permitted use. Ultimately, then, with respect to the yard setback and lot width variances, the requested relief is limited to the least relief necessary to enjoy use of the Property as a single-family residence, as dictated by the requirements locating the ISDS system on the Property and complying with Department of Environmental Management Groundwater *Page 40 
and Flood Regulations. However, with respect to the requested relief from the frontage and depth requirements, the Court finds that such relief is redundant given the special use permit which this Court has already granted pursuant to Ordinance § 21-311(h). Therefore, the Board's failure to grant the requested relief by variance does not substantially prejudice the Appellants. In all, the Court is satisfied that the requested variances for yard width and setbacks amounts to the least relief necessary to allow the Appellants to enjoy use of their property.
Accordingly, this Court finds the decision of the Zoning Board denying Appellants' application for zoning relief in the form of a special use permit and dimensional variances was made in violation of constitutional, statutory, or ordinance provisions, in excess of the authority granted to the Zoning Board of Review by statute or ordinance, upon unlawful procedure, is affected by error of law and is clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record resulting in an arbitrary or capricious decision characterized by abuse of discretion and substantially prejudicing the rights of the Appellants in that it is unsupported by substantial evidence and relies upon the incorrect legal standards. Because this Court's review of the evidence before the Board demonstrates that the Appellants' application for zoning relief was clearly supported by substantial evidence, this Court reverses the decision of the Zoning Board denying the Appellants' request for a special use permit to build on an undersize lot and variances from the Zoning Ordinance's yard width and setback requirements. In light of this Court's reversal of the decision denying the special use permit and yard width and setback variances, the requested variances for frontage and *Page 41 
depth are rendered redundant. As such, the Board's decision denying a dimensional variance for the frontage and depth requirement is affirmed.
 IV Award of Attorneys Fees
Appellants request this Court award reasonable attorneys' fees and litigation expenses pursuant to the Equal Access to Justice for Small Businesses and Individuals Act, § 42-92-1, et. seq. ("Equal Access to Justice Act"), because, Appellants argue, the Board's actions were not substantially justified. In response, The Zoning Board asserts that "[w]hile the Board's written decision of 9/25/07 may not provide a detail by detail explanation of the Board's decision, the record as a whole is clear — there was more than sufficient justification for the Board's decision." Because this Court has concluded that the Board's decision was made in violation of constitutional, statutory, or ordinance provisions, is clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record, and is arbitrary or capricious and characterized by abuse of discretion such that it has prejudiced substantial rights of the Appellants, this Court will consider whether it was, nonetheless, substantially justified thereby preventing the award of fees.
"[I]n order to encourage individuals and small businesses to contest unjust actions by the state and/or municipal agencies," the act permits recovery of the reasonable litigation expenses borne by individuals and small businesses who are successful ". . . in contesting an agency action, which was without substantial justification." Section 42-92-1(b). The Equal Access to Justice Act applies to all adjudicatory proceedings, including any proceeding resulting in the denial of a permit, made by an agency of the state including "any state and/or municipal board . . . *Page 42 
authorized by law to make rules or to determine contested cases." Section 42-92-2(2), (3).
The Act provides, in pertinent part, that:
 [w]henever an agency conducts an adjudicatory proceeding subject to this chapter, the adjudicative officer shall award to a prevailing party reasonable litigation expenses in connection with that proceeding. The adjudicative officer will not award fees or expenses if he or she finds that the agency was substantially justified in actions leading to the proceedings and in the proceeding itself. The adjudicative officer may, at his or her discretion, deny fees or expenses if special circumstances make an award unjust. Section 42-92-3(a).
The Act further permits courts that review the underlying agency decision to award "fees and other expenses" in accordance with the standards of the Equal Access to Justice Act. Section 42-92-3(b);see also § 42-92-5 (". . . [Court] may modify the fee determination if it finds that the failure to make an award, or the calculation of the amount of the award, was not substantially justified based upon a de novo review of the record.").
Under the Act, "substantial justification" means that "the initial position of the agency, as well as the agency's position in the proceedings, has a reasonable basis in law and fact." Section 42-92-2(7). In fulfilling the "substantial justification" test, the Board must show, "not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct." Krikorian v. RhodeIsland Dept. of Human Services, 606 A.2d 671, 675 (R.I. 1992) (quotingTaft v. Pare, 536 A.2d 888, 893 (R.I. 1988) (internal quotations omitted)). However, reasonable litigation expenses may be denied "if special circumstances make an award unjust." Section 42-92-3(a). *Page 43 
After review of the entire record in this case, this Court concludes that the Board did not have substantial justification for denying Appellants' application. As a preliminary matter, the Court would be remiss in failing to mention the utter lack of substantive findings present in the Board's determination letter. The Rhode Island Supreme Court has consistently and repeatedly warned that, in reaching decisions, zoning boards satisfy at least their minimum duty "to make certain that zoning-board decisions . . . address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief. . . ." Sciacca v.Caruso, 769 A.2d at 586 (2001); Irish Partnership, 518 A.2d at 358
(1986); May-Day Realty, 107 R.I. at 239, 267 A.2d at 403 (1970). Despite these warnings, the Board issued a decision that even the Board admits does "not provide a detail by detail explanation of the Board's decision. . . ." Thus, at a minimum the Board's initial position in approving a clearly insufficient decision was not substantially justified and necessitated additional litigation costs in both time and money.
Turning to the substance of the Board's position during the proceedings, the record shows that Appellants' experts provided the Board with considerable evidence demonstrating that the Appellants satisfied all of the standards set forth in Ordinance § 21-14 and § 21-15. Despite receiving an application for dimensional variances and a special use permit, when addressing the merits of the variance requests, the Board applied the incorrect "loss of all beneficial use" standard applicable to use variances rather than the appropriate Viti "more than a mere inconvenience standard" applicable to dimensional variances. In reaching its conclusion, the Board failed to account for the expert testimony before it and simply rejected the expert testimony and other supporting *Page 44 
evidence in a conclusory manner, failing to point to any contradictory testimony or disclose any special knowledge or expertise on which they could have reasonably based their denial. As this Court has already determined, the Appellants are clearly entitled to the relief sought under the Viti standard but perhaps most troubling, is that the Board clearly failed to recognize that the Appellants would have been entitled to relief under the much more stringent loss of all beneficial use standard. Thus, the Court finds specious the contention that the Board's decision is substantially justified. In light of the clarity of this determination, not only was the Board's decision not well founded in law and fact, it was not even marginally reasonable. Furthermore, the Court can identify no circumstances which would make the award of reasonable litigation expenses may be denied "unjust." Section 42-92-3(a).
Thus, given all of the foregoing, the Board did not have substantial justification in law or fact for denying Appellants' application. Accordingly, Appellants are entitled to an award of reasonable litigation expenses pursuant to § 42-92-1 et. seq.
 V Conclusion
Appellants seek zoning relief from the provisions of the North Kingstown Zoning Ordinance in order to construct a single-family residential dwelling on their otherwise useless lot. Because the decision of the Zoning Board denying Appellants' application for zoning relief in the form of a special use permit and dimensional variances was made in violation of constitutional, statutory, or ordinance provisions, in excess of the authority granted to the Zoning Board of Review, by statute or Ordinance, upon unlawful procedure, is affected by error of law, and is clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record resulting in an arbitrary or *Page 45 
capricious decision characterized by abuse of discretion and substantially prejudicing the rights of the Appellants, this Court reverses the decision of the Zoning Board denying Appellants' request for a special use permit to build on an undersize lot and variances from the Zoning Ordinance's yard width and setback requirements. Because a dimensional variance for the frontage and depth requirement would be redundant, the Board's decision denying the same is affirmed. Furthermore, because the Board's position was not substantially justified, the Appellants are awarded reasonable litigation expenses. Counsel for Appellants shall submit an affidavit for counsel fees within 7 days. The issue of the reasonableness of the fee request will be heard on the June 26, 2009 formal and special cause calendar.
Counsel for Appellants shall prepare an order for entry within 10 days of this opinion's publication.
[1] This Court acknowledges that Ordinance § 21-311(g) is not a provision for a special use permit, but rather it provides minimum frontage and depth requirements to build a single-family dwelling, where a lot is non-conforming as to frontage and depth. This Court also notes that Ordinance § 21-311(h) gives the Board the authority to grant a special exception in particular circumstances where a non-conforming lot as to frontage and depth meets the lot size requirement.
[2] A description of the easement was included as an Exhibit given to the Zoning Board during the hearing. The Exhibit describes an easement over Lot 63 for a public turn-around. However, the copy of the easement provided to the Board does not have the City Clerk's recording stamp on it. (Zoning Board of Review Petition.)
[3] "Mr. Chairman, just to pound out, under the ordinance which, I guess, is 311(f)(1) that is being requested, those are use variances. They're not dimensional variances. . . . It's actually supposed to be considered a use variance, meaning there is no other beneficial use of the property if you don't give them the relief of the dimension." (Tr. 9/11/07 at 24.) "You also have to show that they cannot use the property for anything else if you don't give them that relief." (Tr. 9/11/07 at 25.) "This all falls under a special use permit for all these dimensions then." (Tr. 9/11/07 at 25.)
[4] Ordinance § 21-11(c)(3) provides in full that:
 The concurring vote of four of the five members of the zoning board of review sitting at a hearing shall be required to decide in favor of an applicant on any matter within the discretion of the board upon which it is required to pass under this chapter, including variances, special permits and special use permits.
[5] The Court acknowledges that there is no "section 906.3" within the Ordinance; accordingly, it will assume the Board member intended to reference Ordinance § 21-186.
[6] For examples of ways expert testimony may be attacked before a zoning board see, e.g., East Bay Community Development Corp. v. ZoningBoard of Review of Barrington, 901 A.2d 1136, 1157 (R.I. 2006) (recognizing the possibility of a challenge to expert testimony on the basis of the zoning board member's personal knowledge and observations provided there are adequate disclosures on the record); Restivo v.Lynch, 707 A.2d 663, 671 (R.I. 1998) (noting that expert testimony can be discredited through examination of the expert by members of the zoning board or by counsel for an interested party).
[7] The Property yields zero feet of frontage to Boyer Street, a paper street. The Ordinance provides, "Any lot line bordering along a paper street shall not be considered in calculating the minimum required frontage under this chapter." (Ordinance § 21-22.)
[8] The requirement in § 45-24-41(C)(2) that the applicant's hardship constitute "more than a mere inconvenience" originated in the case ofViti v. Zoning Board of Review of Providence, 92 R.I. 59, 59,166 A.2d 211, 211 (1960) and is more commonly known as the Viti Doctrine.
[9] Appellant has asked for a special use permit and a dimensional variance. Historically, Rhode Island law held that a special use permit was not available in conjunction with a dimensional variance or where a special use permit was available to allow for construction on an undersized lot because it was thought that the result would be to allow for the relaxation of the special use criteria whenever those criteria or size requirements resulted in more than a mere inconvenience to the applicant. See DeStefano v. Zoning Board of Review of Warwick,122 R.I. 241, 246-47, 405 A.2d 1167, 1170 (1979) ("The Viti doctrine . . . was never intended to operate where the requested relief can be obtained through local zoning ordinances." Thus, the Viti Doctrine was inapplicable where the "Zoning Ordinances allow[ed] the board to grant a special exception for the construction of a permitted use on an undersized lot. Section 14.2.2 of the ordinances empowered the board to grant relief from set-back requirements."); see also Newton v. ZoningBoard of Review of City of Warwick, 713 A.2d 239, 240 (R.I. 1998) (describing the holding in Northeastern Corporation v. Zoning Board ofReview of New Shoreham, 534 A.2d 603 (R.I. 1987) as "in effect that a dimensional deviation could not be granted in a situation in which a use was permitted by way of a special exception").
Thus, in order to avoid supplanting the special use criteria with the relatively lenient Viti standard the only way a property owner could use their property for a conditionally permitted use if it would have required a dimensional variance is by satisfying the much more difficult loss of all beneficial use standard applicable to use variances.See section 45-24-41(b)(1). Apparently objecting to the onerous burden this placed on individuals' enjoyment of their property, in the wake of our Supreme Court's decision in Newton, the General Assembly amended the enabling act to allow the State's municipalities to provide for special use permits in conjunction with dimensional variances. As our Supreme Court observed in Lischio, 818 A.2d at 693, "the 2002 amendment to § 45-24-41(d) (P.L. 2002, ch. 218, § 1) provides that a dimensional variance is now available to an applicant in conjunction with a special-use permit application (formerly known as a special exception according to § 45-24-31(57)); in this circumstance the zoning board must decide whether granting the special-use permit conforms with the requirements of § 45-24-42 and further, whether a special-use permit coupled with dimensional relief adversely affects the surrounding area.See § 45-24-42(c), as amended by P.L. 2002, ch. 218, § 1." It remains unclear, however, the extent to which the amendment to § 45-24-42(c) permits a variance to be used to vary the special use criteria, but where, as is the case here, the dimensional requirements stem from the zoning restrictions rather than as a criteria for issuance of the special use permit it is clear that the impact of the 2002 amendment to § 45-24-42(c) is to impose the Viti standard on the Board's consideration of the Zoning Ordinances.
[10] The Court notes that even if one considers the use to be put to the property, a single-family residential home is a permitted use in every district in North Kingstown except where prohibited because of safety concerns. Thus, because those concerns have already been addressed by this Court, the proper inquiry is again, in this context, limited to consideration of the scope of the requested variance and not on the use to which the property will be put. *Page 1